FILED
U.S. District Court
District of Kansas

JUN 0 9 2016

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK HOLICK, )
 )
 Plaintiff, )
 )
-vs- ) No. 6:16-cv-1188-JTM-GEB
 )
JULIE A. BURKHART, )
 )
 Defendant. )
_____ )

## COMPLAINT

Mark Holick, plaintiff, in support of his causes of action against the above-named defendant, alleges and states:

1. Mark Holick is an ordained minister and resident and citizen of the State of Oklahoma.

2. Defendant Burkhart operates an abortion facility at 5101-5107 East Kellogg, Wichita, Kansas. Burkhart is a Kansas resident, residing at 161 S. Belmont, Wichita, Kansas.

3. The jurisdiction of this Court is based upon diversity of citizenship of the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs, pursuant to 28 U.S.C. 1332 and 28 U.S.C. 1391(a)(1)(2).

4. Venue is proper as the subject events occurred in Wichita, Kansas.

### FACTS AS TO ALL COUNTS

5. On or about March 7, 2012, defendant Julie A. Burkhart filed an anti-stalking petition against Mark Holick in the Sedgwick County District Court. The petition was on a form personally completed by defendant in her own handwriting, and included a verification in which she attested that the information alleged therein was true and correct. (Exhibit 1, attached.)

6. The anti-stalking petition was based on information that was not true and was incorrect. Defendant made numerous false and inaccurate allegations against Plaintiff Holick. Her petition wrongfully accused Holick of "stalking" Burkhart by "picketing" in front of her house on

November 17, 2012 from 11:30 a.m. to 1:30 p.m., handing out a "wanted-style flyer" about Burkhart, and having "posters w/inflammatory language." (Ex. 1, p. 2, ¶ 4.)

7. The petition also falsely alleged that on February 15, 2013, between 7:30 a.m. and 9:30 a.m., Mark Holick was "stalking" Burkhart when he allegedly "pointed a sign towards my house that said 'where is your church'" and "used a bull horn or way to magnify volume." (*Id.*)

8. Pastor Holick was not present in front of Burkhart's house on either occasion. Holick was not stalking Burkhart.

9. The petition wrongfully alleged that on an unspecified date in January 2013, plaintiff committed an "additional incident" of "stalking" when he "was at my place of business, standing in the middle of the driveway" and "walked the perimeter of the building, scoping it out." (*Id.*)

10. Defendant alleged that she needed the "protection from stalking order because he [plaintiff] is engaging in behavior meant to scare and intimidate me. He also uses violent language." (Ex. 1, p. 2, ¶ 5.) This allegation is also false.

11. As a result of defendant's filing of the verified petition and defendant's unfounded accusations of "stalking" therein, the Sedgwick County District Court entered an *ex parte* anti-stalking order against Mark Holick. This order was based solely on the false representations of defendant and was not based on an evidentiary hearing or on any evidence other than the fallacious handwritten allegations by defendant in her petition.

12. Defendant Burkhart did not make reasonable efforts to verify the truth or accuracy of the allegations she personally asserted and verified in her anti-stalking petition. On the date of the first alleged incident of "stalking," November 17, 2012, Burkhart and her family were not present at her address during the times specified in the anti-stalking petition. She did not, and could not, have witnessed Pastor Holick at that event. He was not there. She was not there.

13. That morning, Burkhart had arranged for an acquaintance to film the protesters on the public sidewalk in front of her house in her absence. Mark Holick does not appear in the video or in any still photographs of the event. Holick was not in front of her house during that event.

14. Regarding her allegation that Pastor Holick was holding a sign with "inflammatory language" in front of her house during the November event, defendant later testified under oath that she did not actually see Holick holding such a sign or poster. When asked whether Holick was present holding a sign, she testified, "I don't know," and that "he might have been."

15. Burkhart testified at her deposition that she was not at her house on the morning of November 17, 2012 when the first event occurred. She had no opportunity to observe the protestors and had no firsthand knowledge of their identity and who was actually there in front of her house. Burkhart admitted at her deposition that she relied on hearsay to form her belief that Holick was in front of her house that day.

16. On February 15, 2013, the date of the second alleged incident of "stalking" by Pastor Holick, he was not present in front of defendant's house.

17. Burkhart later testified under oath that early in the morning of February 15, she was surprised to hear some activity outside and was so afraid for her safety that she only glanced out the window: *"I didn't really look too long or hard* because I saw the Where is Your Church sign and decided I should stay away from the window because I was afraid that somebody might be trying to harm me. ... *I thought I might get shot.*"

18. Despite her accusation in the verified petition that Holick was present at her house and using a bull horn at the incident in February 2013, Burkhart later admitted under oath that she could not identify the person using the bullhorn because she "didn't look too long or hard because [she] didn't want to stay too close to the window." She testified, "I glanced out the window and I saw what was going on. I saw the sign and I was like, I better not go back to that window because somebody might be waiting to shoot me."

19. The "Where is Your Church" sign is a sign which had sometimes been used, for over a decade, by some Christian pro-life advocates to raise awareness among other Christians concerning the issue of the inactivity and tolerance of abortion by some churches.

20. Burkhart testified under oath that her entire knowledge of the February 2013 incident

was based solely upon her quick glance out the window, what she heard with her ears, and her belief that the same people were involved that day who were also involved in the November 2012 event in front of her house. She did not check any videos or photos of the February incident and had no other sources of information before filing the anti-stalking order against Holick.

21. At her deposition, defendant Burkhart testified that she had "singled out" Mark Holick for the anti-stalking order because she believed he was "the leader" of the protest activity in front of her home. This opinion was not only incorrect, but was based on hearsay. Burkhart did not seek an anti-stalking order against any other person, or against any protestor actually present in front of her house, or against any other leader or pastor involved in pro-life activities. She testified incorrectly that, "He is the leader of the protest activity" and "that's why, uh, he's singled out."

22. During the incident on February 15, 2013, defendant called the Wichita Police, who responded to her address. At that time, she made a complaint against the two protestors who were on the sidewalk in front of her house. Those persons are identified in the resulting police report. Pastor Holick was not one of them. (He was not present.) Defendant made no complaint about Mark Holick to the police that day.

23. Pastor Holick has never stalked defendant at her home or workplace. He never protested in front of defendant's house at any time. He never held a sign in front of her house, never used a bullhorn there, and never used "inflammatory language" at that location.

24. During both events, November 17, 2012, and February 15, 2013, Mark Holick was a substantial distance from Burkhart's house, at a position on the north side of Douglas Avenue. He was located at least ten houses, plus the four lanes of Douglas, north of Burkhart's house, the equivalent distance of over two standard city blocks. He was engaged in activities protected by the First Amendment, holding a legal sign in an effort to increase awareness of abortion related issues among passers-by in vehicles on Douglas Avenue.

25. Defendant alleged a third incident of "stalking" on an unspecified date in January 2013, where Mark Holick was allegedly at the clinic walking "the perimeter" and "scoping it out."

Assuming such allegations are true, they do not rise to the level of "stalking" of Burkhart. Burkhart testified that he may have had a legitimate purpose for his presence, that she did not really know why he was at the clinic, and she did not know whether he had a valid religious purpose for being there.

26. Burkhart also testified that plaintiff's conduct was not directed at her personally, but "seemed to be specific to the business at that time." She agreed that before January 2013, there had been thousands of protestors at the facility and some may have walked the perimeter, back and forth.

27. Burkhart alleged that there was a surveillance video of Holick at the clinic in January 2013, but Burkhart has never produced the video, despite requests by Holick.

28. Pastor Holick did nothing illegal or unlawful at defendant's workplace in January 2013, which was the abortion clinic on East Kellogg in Wichita, Kansas. While there, he was a participant in peaceful, lawful religious protests and expressive activities of free speech, all protected by the First Amendment of the United States Constitution. He was on the public sidewalk, which this Court has recognized is a traditional public forum for such activities, a forum that has been used by thousands of people for First Amendment purposes.

29. It was foreseeable to defendant Burkhart, and she knew and should have known, that by filing the anti-stalking petition containing false allegations, her actions were likely to generate media coverage, publicity, and publication of the false charges. In fact, her filing of the anti-stalking petition with the specious accusations of "stalking," along with the resulting media interviews, caused extensive negative media publicity about Mark Holick and created the false impression in many members of the public that Mark Holick was a stalker and violent agitator who had gone to defendant's house to terrorize her.

30. The wrongful filing of the petition by defendant Burkhart placed Pastor Holick at risk of arrest by law enforcement, such that he curtailed or reduced his First Amendment and religious expressive activities and feared for his safety. The anti-stalking order had a chilling effect on his exercise of First Amendment activities and caused him worry, anxiety, and fear of arrest.

31.     For the next two years, defendant continued the temporary order against plaintiff and did not make it a permanent injunction. As late as January 2015, defendant attempted to influence the Wichita police to arrest Mark Holick for violating the anti-stalking order. The filing of the petition and false accusations of "stalking" caused extensive negative media publicity about him.

32.     Ultimately, when faced with a motion for summary judgment by Holick, defendant voluntarily dismissed her stalking case, leaving Mark Holick as the prevailing party.

33.     The initiation, continuation or procurement of the "anti-stalking" order, based on complete falsehoods, caused plaintiff Holick to incur tens of thousands of dollars in attorney fees.

## COUNT ONE - MALICIOUS PROSECUTION

34.     Plaintiff incorporates by reference, as if fully set forth herein, paragraphs numbered 1 through 33, above.

35.     As described above, defendant Julie A. Burkhart initiated, procured, and continued an anti-stalking proceeding and restraining order in the District Court of Sedgwick County Kansas, against Mark Holick, without lawful grounds.

36.     Burkhart lacked probable cause for the false allegations, did not take reasonable measures to ascertain the veracity of said allegations, and was reckless and intentional in filing the false stalking charges against Holick.

37.     At the time she filed her "verified" petition, defendant had neither reliable evidence to support the false allegations, nor reasonable grounds supported by factual circumstances sufficiently strong in themselves to warrant a cautious or prudent person to believe that Holick actually committed the acts of which Burkhart complained.

38.     Burkhart acted with malice in "singling out" Pastor Holick, on her unfounded suspicion that he was "the leader" of the protest activity, and in the initiation and continuance of the anti-stalking order based on falsehoods, hearsay, and inadequate evidence. Her malicious continuance of the order included opposition to Holick's motion to dismiss while knowing full well that her allegations were false, and her attempt to have Pastor Holick arrested in January 2015 under

that order, which she allowed to remain in place and in effect for over two years until Mark Holick prepared and filed a detailed motion for summary judgment, with supporting affidavits from several witnesses, at which time Burkhart voluntarily dismissed the petition.

39. By voluntarily dismissing her petition, the proceedings were terminated in favor of the plaintiff herein, Mark Holick.

40. As a result of the aforesaid wrongful acts of defendant Burkhart, Mark Holick has been caused to incur the various damages described above, including attorney fees, which have continued and will continue, in an amount in excess of $75,000.00.

## COUNT TWO - ABUSE OF PROCESS

41. Plaintiff incorporates by reference, as if fully set forth herein, paragraphs numbered 1 through 37, above.

42. As described in detail above, defendant acted in a false and improper manner in the prosecution of a regular proceeding under Kansas law for anti-stalking against Mark Holick. The use of substantial falsehoods, speculation and mere suspicion, without probable cause, to obtain an anti-stalking order is improper, illegal, and unauthorized by law.

43. Defendant Burkhart had ulterior, improper motives, to "single out" and harass Holick because of her unfounded belief that he was "the leader" of pro-life protest activity and because of her desire to punish and stifle such protests for her own financial gain, political motives, and goals to promote abortion in Wichita, Kansas, for her personal profit and gain.

44. The abuse of the anti-stalking process by Burkhart was done for the purpose of causing, and did cause, great inconvenience and hardship to Mark Holick.

45. As a result of the aforesaid wrongful acts of defendant Burkhart, Mark Holick was been caused to incur the various damages described above, which have continued and will continue, in an amount in excess of $75,000.00.

## COUNT THREE - DEFAMATION

46. Plaintiff incorporates by reference, as if fully set forth herein, paragraphs numbered 1 through 45, above.

47. Defendant Burkhart communicated false information and defamatory allegations that Mark Holick was stalking her in front of her house and at her workplace. Such defamatory communications tended to expose Mark Holick to public ridicule, contempt, and hatred by some members of the public, and deprived plaintiff of some of the benefits of public confidence and social acceptance. The defamatory allegations are set forth with specificity in ¶¶ 6-21 and 23-28 above.

48. Defendant's defamatory communications were not made in good faith, but were made with improper motives. See ¶ 43, above.

49. The communications were not privileged. Mark Holick was not a public figure, nor was Burkhart a publisher or broadcaster.

50. Said communications were made with knowledge that they were false and with a reckless disregard for the truth, and were made with evil-mindedness or a specific intent to injure the reputation and credibility of Pastor Holick. Plaintiff incorporates here ¶ 29, above.

51. At the time the defamatory statements were made in the verified petition, defendant knew and had reason to know that such statements would become a part of the public record and would further likely be published by the media, resulting in injury to plaintiff's reputation. See ¶ 29.

52. As a result of the aforesaid wrongful acts of defendant Burkhart, Mark Holick was caused to incur injury and harm to his reputation and standing in the community and with his peers, and said damages have continued and will continue, in an amount in excess of $75,000.00.

WHEREFORE, Mark Holick, plaintiff, respectfully requests that this court enter judgment against defendant Burkhart for all damages listed above, in an amount exceeding $75,000.00, together with interest, costs, and such other and further relief as the court deems just and equitable.

Respectfully submitted,

Mark Holick, pro se
1604 Whispering Creek Drive
Edmond, Oklahoma 73013

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Rule 205, Mark Holick, plaintiff, requests the trial of the above-referenced and captioned matter be held in the City of Wichita, State of Kansas.

Mark Holick, pro se
1604 Whispering Creek Drive
Edmond, Oklahoma 73013

COPY



FILED
APP DOCKET NO. MV

2013 ... 10:02
CLERK OF DIST...
SEDGWICK COUNTY, KS
BY _____

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

Julie A. Burkhart
Plaintiff

vs.

Mark Hollick
Defendant

Case No. 13DM 1453

## PETITION FOR PROTECTION FROM STALKING ORDER
(K.S.A. 60-31a01 et seq.)

1. Plaintiff seeks an order for protection from stalking for:
   ☒ myself; or
   ☐ my minor child (under age 18); or
   ☐ a minor child who lives with me.

2. The minor child for whom Plaintiff seeks protection is: (give full name and year of birth)

   NAME                                          YOB
   _____

3. Defendant, Mark Hollick (name), can be served at: (please provide all available addresses)

   HOME street 543 S. Limuel Ct, city Wichita
   state KS zip code 67335 phone number 316.722.5353
   times when defendant is usually there Unknown

   WORK: street Word of Life, 3811 N. Meridian city Wichita
   state KS zip code 67204 phone number 316.838.9200
   times when defendant is usually there Unknown

   OTHER: street Spirit One city Unknown address
   state _____ zip code _____ phone number 316.303.0095
   times when defendant is usually there Unknown

   pastor@spiritone.cc.org

1 of 5

PS-2991 (Page 5)

EXHIBIT 1

**COPY**

13DM 1453

4. Describe the incidents of stalking. Include specific facts, dates and locations:

Incident #1: Sat, Nov. 17 2012, 11:30 a.m. – 1:30 p.m., Neighborhood. Picketing @ my house and my neighborhood. Handed out a wanted-style flyer about me, Julie Burkhart. Had posters w/ inflammatory language.

Incident #2: Fri. Feb. 15, 2013, 7:30 a.m. – 9:30 a.m. Pointed a sign towards my house that said, "WHERE'S YOUR CHURCH." My former boss was murdered in his church. Used a bull horn or way to magnify volume.

Additional Incident(s), if any: January 2013 – Mark Hollick was at my place of business, standing in the middle of the driveway with John Pride. He also walked the perimeter of the building, scoping it out.

(Attach additional pages as needed.)

5. Plaintiff needs a protection from stalking order because: he is engaging in behavior meant to scare and intimidate me. He also uses violent language, which I take very seriously.

6. The stalking occurred in this county. Sedgwick County, KS.

7. Plaintiff requests that the Court issue an Ex Parte Temporary Order of Protection and Final Order of Protection restraining defendant from:

☒ following, harassing, telephoning, contacting or otherwise communicating with the protected person
☒ abusing, molesting or interfering with the privacy or rights of the protected person
☒ entering or coming on or around the premises or the residence of the protected person located at: _____
and the workplace located at: 5101-5107 E. Kellogg, Wichita, 67218
(Give address or other description of residence and workplace from which Defendant is to be excluded. DO NOT include the residential address if it is to remain confidential.)

8. The court shall give copies of orders to the appropriate law enforcement agencies; set a date, time and hearing on this matter; and issue summons to Defendant, notifying Defendant of this action and the relief requested.

Ex. 1, p. 2

13DM 1453

9. After a hearing, the court should issue a final order of protection prohibiting Defendant from committing any acts of stalking against the protected person; order Defendant to pay court costs and attorney fees if appropriate; and order any other relief necessary for the safety of the protected person including:

_____
_____
_____

Plaintiff's signature _____
Plaintiff's Name: _____

(DO NOT include the residential address of the Plaintiff in this petition if it is to remain confidential. If the address is to remain confidential, Plaintiff must complete the Protection from Stalking Confidential Address Form and include it with this petition.)

Attorney representing Plaintiff (if any)
Attorney's Name: _____
Address 1: _____
Address 2: _____
City, State, Zip: _____
Telephone _____

## VERIFICATION

STATE OF _____ )
                                  ) ss:
COUNTY OF _____ )

I swear or affirm that the statements made in this Petition are true and correct to the best of my knowledge and belief and that I am the person filing this petition.

_____
Plaintiff's signature

Ex. 1, p 3

**COPY**

13 DM 1453

SUBSCRIBED AND SWORN to before me, a Notary Public, this 7+th day of March 20 13.

_Louise Cody_
Notary Public



My Appointment Expires:
_____

PS-2991 (Page 8)

Ex. 1, p. 4