IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK HOLICK,

Plaintiff,

vs. Case No. 16-1188-JTM

JULIE BURKHART,

Defendant.

MEMORANDUM AND ORDER

Mark Holick is an ordained minister and an opponent of abortion. Julie Burkhart operates an abortion facility in Wichita, Kansas. In the present action, Holick has sued Burkhart for malicious prosecution, abuse of process, and defamation based upon Burkhart's 2013 petition against him under the state's anti-stalking statute. Burkhart has moved to dismiss the action.

Burkhart filed a Protection From Stalking action against Holick on March 7, 2013. The court issued a temporary order the same day According to Holick's Complaint, Burkhart continued the temporary order against him for two years without making it a permanent injunction. As late as January 2015, the Complaint alleges, Burkhart tried to influence the Wichita police to arrest Holick for violating the anti-stalking order. Holick contends that the filing of the petition and false accusations of "stalking" caused extensive

negative media publicity about him.

On or about March 7, 2012, Burkhart filed an anti-stalking petition against Holick in the Sedgwick County District Court. The petition was on a form personally completed by defendant in her own handwriting, and included a verification in which she attested that the information alleged therein was true and correct. Holick's Complaint alleges that the petition was based on information that was not true and was incorrect, including the claim of "stalking" Burkhart by "picketing" in front of her house on November 17, 2012 from 11:30 a.m. to 1:30 p.m., handing out a "wanted-style flyer" about Burkhart, and having "posters w/inflammatory language."

Holick contends the petition also falsely alleged that on February 15, 2013, between 7:30 a.m. and 9:30 a.m., Holick was "stalking" Burkhart when he allegedly "pointed a sign towards my house that said 'where is your church'" and "used a bull horn or [another] way to magnify volume."

The Complaint alleges that Holick was not present in front of Burkhart's house on either occasion, and that he was not stalking Burkhart.

Burkhart also alleged in her petition that on an unspecified date in January 2013, Holick committed an "additional incident" of "stalking" when he "was at my place of business, standing in the middle of the driveway" and "walked the perimeter of the building, scoping it out." Burkhart alleged she needed the "protection from stalking order because he [plaintiff] is engaging in behavior meant to scare and intimidate me. He also uses violent language."

After Burkhart filed her petition, the Sedgwick County District Court entered an *ex parte* antistalking order against Holick. This order was based solely on the allegations in the petition, without any evidentiary hearing.

The Complaint filed in the present action alleges Burkhart did not make reasonable efforts to verify the truth or accuracy of the allegations she personally asserted and verified in her anti-stalking petition. According to the Complaint, on the date of the first alleged incident of "stalking," November 17, 2012, Burkhart and her family were not present at her address during the times specified in the anti-stalking petition. She did not, and could not, have witnessed Pastor Holick at that event, it alleges, because he was not there, and she was not there.

Also according to the Complaint, during the incident on February 15, 2013, Burkhart called the Wichita Police, who responded to her address. At that time, she made a complaint against the two protestors who were on the sidewalk in front of her house. Those persons are identified in the resulting police report. Pastor Holick was not one of them. (He was not present.) Defendant made no complaint about Mark Holick to the police that day.

The Complaint alleges that Holick has never stalked Burkhart at her home or workplace. He never protested in front of defendant's house at any time. He never held a sign in front of her house, never used a bullhorn there, and never used "inflammatory language" at that location. Rather, according to the Complaint, Holick was a "substantial distance" from Burkhart's house, at a position on the north side of Douglas Avenue. He

was located at least ten houses, plus the four lanes of Douglas, north of Burkhart's house, the equivalent of over two standard city blocks.

Burkhart alleged a third incident of stalking on an unspecified date in January 2013, where Mark Holick was allegedly at the clinic walking "the perimeter" and "scoping it out." The Complaint alleges that such allegations do not rise to the level of criminal stalking, but merely show that he participated in a peaceful protest.

The Complaint alleges that after Holick moved for summary judgment, the defendant voluntarily dismissed her stalking case, leaving him as the prevailing party.

In support of her Motion to Dismiss, Burkhart presents the orders entered by the Sedgwick County District and transcripts of the hearings before the two judges assigned to the case.[1]

Burkhart filed her Protection From Stalking action against Holick on March 7, 2013. The court issued a temporary order the same day, and set a hearing for March 21, 2013. Burkhart continued the hearing for one week, and Holick then continued the scheduled March 28 hearing until April 11, 2013.

---

[1] In addition, the defendant also repeatedly suggests that the otherwise remarkable delay in resolving the state action was caused entirely by Holick. (Dkt. 6, ¶¶ e, f, h, k, n). While the ultimate fact-finder may conclude this was the case, this is not immediately apparent from the pleadings or documents cited. In many instances, it appears that at least some of the delays were caused by agreed-upon continuances. In addition, the state court explicitly indicated it could not understand why the case was delayed so long. "[T]his matter was continued, at least according to the record, several times by the Court itself. And so it is the Court's opinion that this case was unnecessarily delayed. I don't know why -- particularly why the Court had to continue it." (Tr. at 54).

Holick moved to dismiss the action on April 4, 2013 arguing that his activities were First Amendment protected activities. Holick continued the April 11, 2013 hearing on the temporary order, and asked for a hearing on his motion to dismiss.

The hearing on his motion to dismiss was continued several times by the court and Holick, which was not heard until October 22, 2013. Holick argued the acts alleged by Burkhart could not constitute stalking because they involved expressive conduct protected by the First Amendment. The court denied the motion to dismiss on November 2, 2013.

Holick asked to depose Burkhart, and did so on April 11, 2014.

At the start of May, 2014, Burkhart moved to for a protective order limiting the use her deposition to the stalking action. The court subsequently granted the motion.

Holick eventually moved for summary in judgment 2015. On May 7, 2015, Burkhart filed a motion to dismiss the anti-stalking action as moot because there was no existing order upon which summary judgment could be granted and responding to it would be an exercise in futility. According to Holick, Burkhart filed the motion after he objected to her request for more time to respond to the motion for summary judgment.

On June 10, 2015, the state court heard argument on Burkhart's motion and dismissed the action. "The reality is if we had a hearing today on these motions, or sometime soon, there wouldn't and couldn't be an order issue based upon alleged incidents that happened over two years ago."

The court also determined Holick was not entitled to attorney fees at the June 10, 2015 hearing on Burkhart's motion to dismiss as moot. The court stated:

> The Court may award attorney fees to the defendant in any case where the Court finds that the petition to seek relief, pursuant to this act, is without merit, and I believe that that issue was already addressed by Judge Beasley in his memorandum opinion on your Motion to Dismiss on the constitutional arguments that you made earlier in the case, so at this time, the Court will not order attorney fees in this case, based upon the statute.

(Tr. at 8).

Holick subsequently filed a written motion for attorney's fees, and Holick testified at the September 24, 2015 hearing that if he would have had a chance to testify on April 11, 2013, he would have testified that he had never been in front of Burkhart's home. The court denied the request for attorney fees on November 2, 2013. The court observed:

> And I think maybe parts of my ruling were – were misunderstood at the time I made them back on June 10th of 2015. My point at that time was it would be an exercise in futility to try to have a hearing and to get a final order on something on events that happened over two and a half years before June 10th of 201[5]. And the point there was the plaintiff could never prevail. There would be no way that she could argue for a continued protection from abuse order for [ ] events that happened two and a half years ago. So it's just an exercise in futility, forcing a plaintiff to go forward on something that she can't obtain.

The district court further held:

> I don't really see this as finger pointing as to who continued what, but the reality is the defendant [Holick] did continue the matter. The defendant [Holick] did choose a strategy of seeking a motion to dismiss rather than simply having a hearing and requiring Burkhart to prove the allegations.

Burkhart first moves to dismiss the action because Holick did not serve her with process in a timely manner. Fed.R.Civ.Pr. 4(m) provides that service should occur within 90 days of the filing of the Complaint. In the present case, Holick filed his Complaint on June 9, 2016, but did not serve the defendant with process until September 10, 2016, when

a copy of the Complaint was left with Burkhart's husband at their home. Thus, service occurred 93 days after the Complaint.

Burkhart stresses that Holick has known her address throughout the state action, and indeed testified at the September 24, 2015 hearing that he knew where she lived. His delay, accordingly, cannot be justified on the grounds of ignorance.

In response, Holick stresses that at the time he represented himself *pro se*, he assumed that previous version of Rule 4(m) providing for service within 120 days remained in effect, and the delay was brief.

*Pro se* litigants are not excused from the rule requiring timely service of process. *See Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir.1995). "[M]ere ignorance of the rules ... is insufficient to rise to the level of demonstrating good cause sufficient to warrant a mandatory extension of time, even for a pro se litigant." *Quarles v. Williams*, 2004 WL 2378840, *2 (D. Kan. October 21, 2004) (citing *Espinoza*). Further, "[a]lthough a small delay in achieving service may not prejudice the defendant, absence of prejudice alone does not constitute good cause." *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996) ("inadvertence or negligence[,] mistake of counsel or ignorance of the rules also usually do not suffice").

Even if a party fails to demonstrate good cause, and so be entitled to an extension of time for service under Rule 4(m) as a matter of right, the court retains discretion to dismiss an action without prejudice or to permit an extension. *See Espinoza*, 52 F.3d at 842. Rule 4(m) explicitly authorizes the court to consider whether the applicable statute of limitations would bar the re-filed action. See Fed. R. Civ. P. 4(m) Advisory Committee's

Note to 1993 Amendment. This court has found that "[in determining whether to grant a permissive extension, several factors are appropriate to consider, including whether defendant was on notice of the lawsuit, whether defendant has been prejudiced by delay of service, and whether the applicable statute of limitations would bar the refiling of the action." *Hagan v. Credit Union of America*, No. 2011 WL 6739595, *3 (D. Kan. Dec. 22, 2011) (citations omitted). Further, while the *pro se* status of a party will not support a finding of "good cause" warranting a mandatory extension, it remains a factor which the court may consider in deciding whether to grant a permissive extension. *Sanchez v. City of Albuquerque*, 2014 WL 1953499, *8 (D.N.M. April 30, 2014).

The court finds that the three-day delay does not warrant dismissal of the action. At the time of the Complaint, the plaintiff was *pro se*, had a colorable rationale for believing that he had 120 days to serve process, and Burkhart has also failed to make any credible showing of prejudice arising from the relatively brief delay. While these factors would not individually constitute "good cause" for a mandatory extension of time for service under Rule 4(m), the court finds that collectively they warrant a permissive, limited extension which would effectuate the service and allow the action to proceed.

Next, Burkhart argues the court should dismiss the action because there is no diversity of citizenship, noting that although the Complaint states that Holick is a citizen of Oklahoma, the summons lists his residence as 543 S. Limuel Court in Wichita, Kansas.

The court will not dismiss the action for a lack of subject matter jurisdiction. The Complaint itself states that Holick resides at 1604 Whispering Creek Drive in Edmond

Oklahoma. Holick asks that the court take judicial notice of the Sedgwick County Register of Deeds record showing that he sold the Wichita house in 2013. In addition, he states by affidavit that the Limuel address was included on the summons without his knowledge and by mistake:

> When I got ready to serve my lawsuit in September, 2016, I contacted a friend in Wichita, a receptionist at a law firm, and asked her to find a process server for me and to complete the paperwork necessary for service. She typed up a summons, something she had never done before. She inadvertently put my old Wichita address on the summons. She arranged for service and provided the summons directly to the process server. I did not have an opportunity to review it. The use of my old address was a clerical error on her part. I did not know to correct it because I was in Oklahoma and did not have a chance to review it before it was served.

Burkhart does not respond to respond to the plaintiff's request for taking judicial notice of the sale of the Limuel Court house in 2013, but does argue that his affidavit relies on inadmissible hearsay as to what the his friend, the law firm receptionist, may have done. (Dkt. 18, at 12-13).

Even assuming that the affidavit does contain some hearsay, it also reflects Holick's direct averment of a matter within his own personal knowledge, affirmatively stating that he did not supply the information as to his address to the Clerk of the Court, but delegated preparation of the summons to a third party. That explanation provides a credible explanation for why the Limuel Court residence was included in the Summons. More importantly, as noted earlier, Burkhart supplies no reason not to accept the fact that Holick sold the Limuel Court residence in 2013. Collectively, the court finds that the plaintiff has shown by a preponderance of the evidence shows that he is a resident of Oklahoma. *See*

*Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

Next, Burkhart argues Holick's action is precluded by the R*ooker-Feldman* doctrine, since he is attempting to relitigate matters resolved by earlier state litigation.

> "The *Rooker-Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074–75 (10th Cir. 2004) (footnote omitted). *Rooker-Feldman* "is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). In other words, "*Rooker-Feldma*n bars cases in federal court that are inextricably intertwined with a prior state court judgment." *Johnson v. Riddle*, 305 F.3d 1107, 1116 (10th Cir. 2002) (internal quotation marks omitted).

*Bradshaw v. Gatterman*, 658 F. App'x 359 (10th Cir. 2016)

Burkhart notes that Holick seeks his attorneys fees as damages in the claims for abuse of process and malicious prosecution, while the Sedgwick County District Court twice refused to award attorney fees to Holick. She also agues that his defamation claim is "inextricably intertwined" with the state court's decision addressing the merits of her claim. *See Bolden v. City of Topeka*, Kan., 441 F.3d 1129, 1141 (10th Cir. 2006) (*Rooker-Feldman* precludes relitigation of issues actually addressed and matters inextricabably intertwined with them). According to Burkhart, "[t]he district court first ruled that the PFS petition was not meritless in the November 2, 2013 Memorandum Opinion. That ruling was affirmed at the June 10, 2015 hearing. And it was reaffirmed at the September 24, 2015 hearing." (Dkt. 6, at 5) (citations omitted).

Holick argues that the doctrine has no application here because he was not the

"loser" in state court, but effectively the prevailing party, since Burkhart only moved to voluntarily dismiss her claim after Holick moved for summary judgment. him. *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997) ("a defendant is a prevailing party ... when, in circumstances not involving settlement, the plaintiff dismisses its case against the defendant, whether the dismissal is with or without prejudice"). In addition, the decision of the state court to decline to grant attorney fees in a case considered moot was a matter of discretion, and unrelated to proper consideration of those fees as damages arising from the advancement of a meritless claim.

The court finds that the *Rooker-Feldman* doctrine does not apply because, as the plaintiff correctly notes, the state court never addressed the merits of Burkhart's claims. Accordingly, consideration of the present action presented by Holick does not reflect an attempt to appeal any judgment by the state court. *See, e.g., Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir.1998) ("where a state action does not reach the merits of a plaintiff's claims, then *Rooker–Feldman* does not deprive the federal court of jurisdiction").

Judge Beasley of the Sedgwick County District Court did not reach the merits of Burkhart's claims in his November 2 ruling. For purposes of resolving Holick's motion to dismiss, the court assumed the truth of Burkhart's factual allegations:

> Incident #1: Saturday, November 17, 2012, 11:30 A.m.-1:30 p.m. Picketing @my house and my neighborhood, handing out a wanted style flyer about me, Julie Burkhart, had posters w/inflammatory language.
>
> Incident #2: Fir. Feb. 15, 2013, 7:30-9:30 a.m. Pointed a sing towards my house that said "Where's Your Church." My former boss was

murdered In Church. Used a bullhorn to magnify volume.[2]

Order of Nov. 2, 2013, at 1. The court found ambiguity in the "Where's Your Church?" statement. "The Plaintiff is concerned that it references a connection to the murder of her former employer. The Defendant argues that it references his concern toward the Plaintiff's need for religious affiliation." Id. at 2. The court concluded, "Only by testimony at trial can the meaning of the statement be discerned." Id. at 2-3. Questions of fact and law existed which "must be resolved prior to a resolution of the matter. Only at trial can these concerns be addressed." Id. at 3. Indeed, the court not only accepted the truth of Burkhart's factual allegations, it refrained from any determination that her allegations stated a claim for relief under Kansas law:

> In the opinion of *Schulze v. Coykendall*, 218 Kan. 653, 545 P.2d 392, the court recognized that with the advent of the rules of civil procedure on January 1, 1964, notice pleading was authorized. That is, a pleading need only contain '(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which (the pleader) deems himself (or herself) entitled; and *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 373, 552 P.2d 885. **There is no requirement to state facts sufficient to constitute a cause of action.**
>
> After a review of the Petition, the Court is satisfied that the Plaintiff has met the requirements of the law to provide notice to the Defendant.

---

[2] The court also noted a third allegation that Holick was also "at my place of business ... walking the perimeter of the building scoping it out" in January, 2013. The incident seems to have played no role in the court's decision, which focused entirely the incidents alleged to have occurred at Burkhart's home, and relying on the Supreme Court's recognition of the "sanctity of the home" with the "special benefit of the privacy all citizens enjoy within their own walls ... to avoid intrusions." Order of Nov. 2, 2103, quoting *Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988).

*Id.* at 2 (emphasis added).

It is also incorrect to state that on June 10, 2015 Judge O'Connor "affirmed" the November 2, 2013 determination that Burkhart's claim was "not meritless." First, as noted above, Judge Beasley explicitly disclaimed any "requirement to state facts sufficient to state a cause of action." Second, Judge O'Connor explicitly observed that "[t]here has been no determination on the merits," and "it comes back to they [Plaintiff's allegations] were never more than mere allegations." (Tr. at 6).

Burkhart's reliance on a comment by Judge O'Connor at the September 24, 2015 hearing in which the court denied Holick's request for attorney fees is also unfounded, indicating that Judge Beasley, "did address whether or not the plaintiff's petition to seek relief lacked merit -- or was without merit." (Tr. at 53). Read in context, the court was not suggesting there had been an actual assessment of the merits of Burkhart's claims:

> When I said in the last hearing that Judge Beasley had addressed this matter, I didn't mean that he had addressed specifically attorney fees. He did address whether or not the plaintiff's petition to seek relief lacked merit -- or was without merit. At least that's how I took his order to mean, is that it had to be resolved at a -- at a [future] hearing.

(Tr. 53-54). Throughout the rest of the court's observations, it is apparent that the court understood there had been no resolution of the merits of Burkhart's claims. Judge O'Connor earlier noted the limited nature of Judge Beasley's ruling.

> [Judge Beasley] cites -- and then states that the defendant's request for dismissal of the petition is overruled. So at that point, the defendant's attempt to have this dismissed for constitutional, protected free speech argument had been ruled upon.
>
> There was still the ability, as Judge Beasley points out, to have a

> hearing where the plaintiff would have been required to prove by a preponderance of the evidence that Mr. Holick – or Pastor Holick did what she claims that he did.

Id. at 47-48. And he stressed that his own decision granting Burkhart's request for voluntary dismissal was not a comment on the merits of the action, only its mootness:

> I struggled at the last [June 10, 2015] hearing to — whether I grant the motion for summary judgment, whether we're in the same place or not. *That would have required me to rule on the merits, which I don't believe I could do at the time* because there was no way for the plaintiff to prevail on what this -- on getting a final order at that time. I didn't -- there is just simply no way she could win. And my point about the sheer allegations, which probably should be mere allegations is what I should have said, is that I understand that Pastor Holick wasn't happy about these things being said. I understand -- I don't recall media coverage of this situation. I personally don't recall it. I'm not saying it didn't happen, I'm just saying I don't recall it. But at that point, without a final order and without a final hearing, *they were nothing more than mere allegations was my point.* **She never proved what she claimed, and certainly not by a preponderance of the evidence**.

*Id.* at 54-55 (emphasis added).

Burkhart also argues that the claims advanced by Holick are time-barred under the relevant Kansas statutes of limitations. The present action was filed on June 9, 2016. Under Kansas law, claims for malicious prosecution and defamation must be brought within one year. K.S.A. 60-514(a), (b). Abuse of process has a two-year statute of limitations. K.S.A. 60-513(a)(4).

Burkhart agues that the limitation period on the malicious prosecution claim would have begun to run, at the latest, on March 7, 2015, two years after the date she filed her

anti-stalking petition.[3] (Dkt. 6, at 13). Thus, the filing of the present action on June 9, 2016 was outside the one-year limitations period for malicious prosecution claims. Holick's claim for abuse of process and defamation, she argues, would similarly be barred because the underlying claims commenced on March 7, 2013, when she filed her state stalking claim which included the factual allegations of harassment at her residence.

Holick argues that none of the claims are time-barred, because the statute of limitations on the malicious prosecution action would not have commenced until the time for appealing the dismissal of the action had passed, that is, 30 days after the July 29, 2015 Journal Entry granting the Motion to Dismiss — August 28, 2015. Moreover, Holick argues, the Kansas limitation statutes were tolled while the protection from abuse claim remained pending. *See Mo-Kan Teamsters Pension Fund v. Creason*, 669 F.Supp. 1532, 1537-1538 (D. Kan. 1987) (recognizing tolling "where a party is prevented from exercising a legal remedy

---

[3] Under K.S.A. 60-31a06(b), a protection from stalking order "shall remain in effect until modified or dismissed by the court and shall be for a fixed period of time not to exceed one year." Under subsection (c), "[u]pon motion of the plaintiff the court may extend the order for an additional year." It is unclear when the order issued on March 7, 2013 effectively ended. Judge O'Connor indicated at the September 24, 2015 hearing that, although Burkhardt had not formally moved for an extension of the original order, it had remained in effect for more than one year.

> It's the Court's opinion, I don't know if I necessarily ruled because it's neither here nor there at this point, but it was the Court's opinion based upon what I see written, what the law is, that that temporary order may very well have been in place, even though I would have to respectfully disagree with, I guess, assistant district, Wichita Police Department officers, and assistant United States attorney, and FBI agencies as cited in the plaintiff's motion as saying that the temporary wasn't in effect at the time. As I read it, the statute says the temporary shall remain in effect until service of final order or until terminated by order of the Court.

(Tr. at 41.)

by pendency of legal proceedings" which were "provoked, induced or promoted by the other party"); *Keith v. Schiefen-Stockham Ins.*, 209 Kan. 537, 544, 498 P.2d 265, 272 (1972)

Holick contends that the abuse of process claim is timely both because of the same tolling doctrine, and because, while the abuse of process tort requires "the existence of an ulterior motive and an improper act in the regular prosecution of a proceeding," Kansas law recognizes that the statute for such claims "begins to run at the time both elements have occurred and the injured party would have been able to successfully prosecute the action." *Lindenman v. Umscheid*, 255 Kan. 610, Syl. ¶ 6, 875 P.2d 964 (1994). *See Voth v. Coleman*, 24 Kan.App.2d 450, 945 P.2d 426 (1997). Holick contends he could not have "successfully prosecuted" his abuse of process claim while the state stalking action remained pending. Finally, Holick argues that the defamation claim also should not be deemed to have commenced until the state action was formally dismissed.

The court will not dismiss the action as untimely. With respect to the claim for malicious prosecution, the Kansas Court of Appeals has observed that "a plaintiff's cause of action for malicious prosecution does not accrue until the time for appeal has passed on the original action." *Voth*, 24 Kan.App.2d 450, 452 (1997). *See also Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan.App.2d 461, 701 P.2d 977 (1985) (quoting *H&H Farms v. Halett*, 6 Kan.App.2d 263, 627 P.2d 1161, 1167 (1981) ("'[a] plaintiff's cause of action for malicious prosecution does not accrue until the time for appeal has passed on the original action'"). This court has followed the same rule:

> Accrual of a cause of action for malicious prosecution from the time of entry of judgment would result in wasted judicial resources. If the filing of an

> appeal occurred after the filing of the malicious prosecution action, the malicious prosecution claim would be subject to dismissal as premature because the plaintiff would not have obtained a favorable termination of the underlying case.
>
> Defendants distinguish these cases in that no appeal was taken in the instant case. This is a distinction without a difference. The rationale behind the rule that the statute of limitations runs from the expiration of the time for appeal has equal applicability to the instant case. A claim for malicious prosecution would have been premature had an appeal been filed. The court believes that the Kansas Supreme Court, if presented with this question under the circumstances of this case, would hold that Webb's cause of action accrued on December 13, 1991, the final day on which an appeal could have been filed.

*Webb. v. Airlines Reporting Corp*., 825 F.Supp. 273, 275-76 (D. Kan. 1993) (citations omitted).

In her response, Burkhart cites several decisions dismissing as moot appeals taken from protection from abuse or stalking orders outside expiration of the effective date of the orders. She therefore argues that "even if Holick had appealed the order, the appeal would have been dismissed as moot, thus the 30 days for an appeal need not be taken into consideration." (Dkt. 18, at 19).

But the cited cases do not present statute of limitations issues, only questions of mootness for purposes of appeal. Thus, in *Piazza v. Piazza*, 2004 WL 1443899, *1 (Kan. App. June 25, 2004), the court found moot an appeal from a protection from an abuse order obtained by appellant's former wife, which had been issued after the trial of the abuse allegations. The appeal was filed more than 30 days after the final order was entered, and the appellant "conceded the stalking order had expired." *Id.* Similarly, in *Rice v. Rice*, 2010 WL 922966, (Kan. App. March 12, 2010) the court found moot an appeal from a final protection order which was entered after a trial on the merits. The court stressed that

> it is undisputed that the PFA order expired more than 10 months ago and the record reveals no effort to renew the order. And despite at least two opportunities to respond to the mootness issue, Daniel has failed to do so. Nor has Daniel suggested that he suffered any collateral consequence as a result of the entry of the PFA order or that any of the exceptions to the mootness doctrine apply.

*Id.*

In the present case, no final order was ever issued and no trial conducted. Indeed, as noted earlier, the state court never addressed the merits of Burkhart's claims at all. More importantly, all of the cited cases simply recognize that the doctrine of mootness may apply to appeals from abuse or anti-stalking orders. None of the cases involve or purport to qualify the otherwise clear rule in Kansas that for statute of limitations purposes a claim malicious prosecution claim commences only after the time to appeal has passed, or 30 days after a final judgment. Here, no resolution of the stalking claim was made until July 29, 2015. The time for an appeal passed on August 28, 2015, and the present claim for malicious prosecution is therefore timely.

Moreover, Burkhart's Reply provides no rejoinder to Holick's contention that the malicious prosecution claim was effectively tolled, pursuant to *Voth* or *Mo-Kan Teamsters Pension Fund*. while the state stalking action was pending. *See Voth*, 24 Kan.App.2d at 452 (citing *Lindenman v. Umsheid*, 255 Kan. 610, 624-25, 875 P.2d 964 (1994)) ("malicious prosecution action cannot be brought until the underlying action is concluded and the time for appeal of the underlying suit has passed"). Nor does Burkhart address the tolling argument advanced by Holick that the same policy reasons supporting the tolling of malicious prosecution claims should also apply to defamation claims, where the

defamation arose in the context of earlier litigation.[4]

Burkhart does mention *Lindenman* in her Reply, but only for purposes of noting the essential elements of the abuse of process claim. and otherwise repeats the contention made with respect to the *Rooker-Feldman* doctrine — that Holick "is seeking review" of the November, 2013 "state court rul[ing] that there were allegations in the petition that could support" an inference of threatening conduct. (Dkt. 18, at 20).

As noted above, the state court explicitly eschewed any determination that the allegations in Burkhart's petition set forth a valid cause of action. More importantly, the defendant shows no argument or explanation why the court should not accept plaintiff's contention that the Sedgwick County action effectively precluded any action for abuse of process while it remained pending.[5]

---

[4] The rule requiring a prior favorable termination

> is required ... for several reasons. First, a complaining party cannot show lack of probable cause in instituting the proceeding until it is finally terminated in his favor. Additionally, a complaining party cannot show all damages from the institution of legal proceedings until they are terminated. And, finally, it is recognized that the requirement of final termination serves to help avoid inconsistent judgments from the courts.

*Voth*, 24 Kan.App.2d at 453 (quoting *Hutchinson Travel Agency*, 10 Kan.App.2d at 463) (citations omitted).

[5] The court notes the existence of an unresolved issue suggested by the defendant. At the conclusion of her statute of limitations argument as to the malicious prosecution claim, Burkhart also adds, as if an after thought, that the state court's determination on June 10, 2015 that the matter was moot "is not a finding that satisfies the element of a malicious prosecution which requires a proceeding terminate in favor of Plaintiff." (Dkt. 6, at 13). The argument is advanced only in passing, and only as a part of her statute of limitations argument. Holick does not address the matter in his Response, and Burkhart does not address the issue in her Reply.

To be sure, Holick does argue (Dkt. 17, at 17) that he "was not a 'state-court loser'" in the state action because Burkhart dismissed her claims after he moved for summary judgment,

IT IS ACCORDINGLY ORDERED this 6th day of January, 2017, that the defendant's Motion to Dismiss (Dkt. 5) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

but he raises this argument only in response to Burkhart's *Rooker-Feldman* claim, and only supports it by citing federal cases concluding, for purposes of awarding costs under Fed.R.Civ.Pr. 54(d), a party is a "prevailing party"when his opponent voluntarily dismisses the action. *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997); *Zenith Ins. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 19979). Holick supplies no authority for the proposition that the state court's "proceeding terminated in [his] favor" under Kansas law. *Bergstrom v. Noah*, 266 Kan. 829, 836–37, 974 P.2d 520 (1999).

A voluntary dismissal *may* be sufficient to constitute a favorable termination, but this is resolved by a review of "case-specific circumstances." *See Ball v. Credit Bureau Services, Inc.*, 2015 WL 4366440, *6 (Kan. App. June 26, 2015) (citing *Nelson v. Miller*, 227 Kan. 271, 280, 607 P.2d 438 (1980). ("Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn") and RESTATEMENT (SECOND) OF TORTS § 674, comment j (same)).

Because the parties have not addressed the issue appropriately, the court cannot resolve it. Because the court denies the motion to dismiss with respect to the abuse of process and defamation claims, the court will defer any ruling on the issue until summary judgment.