# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARK HOLICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-1188-JTM-KGG |
| | ) | |
| JULIE A. BURKHART, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM & ORDER ON
## MOTIONS RELATING TO THIRD-PARTY SUBPOENAS

Now before the Court is Plaintiff's "Motion to Quash Third Party
Subpoenas" served upon Plaintiff's witnesses David Gittrich of Kansans for Life,
Pastor Robert Rotola of Word of Life Church, John Pride, Bruce Garren of
Personhood Kansas, and Spirit One Ministries.  (Doc. 56.)  Concurrently pending
are Motions to Quash the subpoenas filed by individual witnesses/recipients of the
subpoenas – Pastor Robert Rotola (Doc. 57), Word of Life Church (Doc. 58), John
Pride (Doc. 67).[1]  Plaintiff also has filed his Amended Motion for Protective Order

_____

[1] Witnesses David Gittrich and Bruce Gerren both filed Motions to Quash (Doc.
61, 63), which were ultimately withdrawn.  (*See* Doc. 82 (intent to withdraw motion by
Gittrich) and 8/14/17 text entry terminating motion; Doc. 92 (intent to withdraw motion
by Garren) and 8/16/17 text entry terminating motion.)  The Court has been advised that
these individuals have reached an agreements with Defendant limiting the scope of the
documents to be produced.

to stay and deny the discovery as it relates to these witnesses.  Having reviewed the

submissions of the parties, the Court is prepared to rule.[2]

## FACTS

In 2013, Defendant received a temporary order of protection from stalking

against Plaintiff in Kansas state court (state court action).  Plaintiff, who is a

resident of Oklahoma, brings the present matter alleging malicious prosecution and

abuse of process against Defendant, a Kansas resident, relating to the allegations

levied against him in the state court action.  (*See generally*, Doc. 84.)

The elements of a claim for malicious prosecution under Kansas law are:

> (a)  That the defendant initiated, continued, or procured
> civil procedures against the plaintiff.
>
> (b) That the defendant in so doing acted without probable
> cause.
>
> (c) That the defendant acted with malice, that is he acted
> primarily for a purpose other than that of securing the
> proper adjudication of the claim upon which the
> proceedings are based.

---

[2] The Court notes that not all of the motions have been fully briefed as time has
not expired for replies to be filed for Docs. 57, 58, and 71.  (The Court also notes that the
time has expired for a reply to be filed as to Doc. 67, but no reply was filed.)  Based on
the arguments raised and authority provided, however, the Court believes that additional
briefing is unnecessary.  This is particularly true as the arguments contained in all of the
various Motions to Quash are analogous and Plaintiff has filed a reply (Doc. 83) to his
initial Motion to Quash (Doc. 56).  Also, Plaintiff filed his Motion for Protective Order (Doc.
71) – which addresses the same issues as his Motion to Quash – *after* Defendant responded
(Doc. 59) to Plaintiff's underlying Motion to Quash (Doc. 56).  As such, the Court has had
ample opportunities to receive argument in reply to Defendant's position on the Motions to
Quash.

(d) That the proceeding terminated in favor of the plaintiff.

(e) That the plaintiff sustained damages.

*In re Landrith*, 280 Kan. 619, 647, 124 P.3d 467 (2005).  "There are two essential elements for the tort of abuse of process:  the existence of an ulterior motive and an improper act in the regular prosecution of a proceeding."  *Lindenman v. Umscheid*, 255 Kan. 610, 621, 875 P.2d 964, 973 (1994) (citation omitted).

In regard to the malicious prosecution claim, Plaintiff alleges that Defendant "lacked probable cause for the false allegations, did not take reasonable measures to ascertain the veracity of said allegations, and was reckless and intentional in filing the false stalking charges against [him]."  (Doc. 84, at 6.)  As for the abuse of process claim, Plaintiff contends that Defendant "acted in a false and improper manner in the prosecution of a regular proceeding under Kansas law for anti-stalking against" Defendant.  (*Id.*, at 7.)  Plaintiff continues that "[t]he use of substantial falsehoods, speculation and mere suspicion, without probable cause, to obtain an anti-stalking order is improper, illegal, and unauthorized by law."  (*Id.*)

Plaintiff alleges that over the course of two years, Defendant

> continued the temporary order against [him] and did not make it a permanent injunction. As late as January 2015, defendant attempted to influence the Wichita police to arrest Mark Holick for violating the anti-stalking order. The filing of the petition and false accusations of

'stalking' caused extensive negative media publicity
about him.

(*Id*., at 5-6.)  Plaintiff alleges that this "curtailed or reduced his First Amendment and religious expressive activities" and caused him to fear "for his safety."  (*Id*., at 5.)  Plaintiff continues that "[u]ltimately, when faced with a motion for summary judgment by [Plaintiff], [Defendant] voluntarily dismissed her stalking case, leaving [Plaintiff] as the prevailing party."  (*Id*., at 6.)  He contends that "[t]he initiation, continuation or procurement of the 'anti-stalking' order, based on complete falsehoods, caused [him] to incur tens of thousands of dollars in attorney fees."  (*Id*.)

The time for Defendant to Answer the Amended Complaint has not yet expired.  In the affirmative defenses contained in Defendants Answer to the original Complaint, however, Defendant contends the statements in her state court petition were true and "in good faith pursuant to a legitimate interest, which is her safety; the statements were limited to those necessary to uphold her interest; and the statements were made in a proper manner to a proper party, the state."  (Doc. 20, at 7.)  Defendant contends that she feared for her safety given the allegedly threatening nature of Plaintiff's statements and actions.  (*Id*.)  For instance, Defendant alleges that the church where Plaintiff served as a pastor "publically celebrated the death" of Dr. George Tiller, the doctor who provided abortion services in Wichita prior to Plaintiff.  (*Id*., at 7.)  Defendant also alleges that

"Plaintiff publicly admitted he was at Defendant's house" with a sign reading

"'Where's Your Church' . . . after pointing out that Dr. Tiller wasn't shot at his

home but at his church." (*Id*.)

Defendant characterizes the third-party subpoenas at issue as seeking

documents and information regarding the anti-abortion/pro-life activities of these

individuals/entities as well as documents "referred to or considered in connection

with" affidavits these individuals submitted in state court action. (*See* Doc. 56-1,

56-2.) Defendant categorizes the requested information as follows:

> (1) documents prepared by the witness that relate to
> abortion; (2) communications between the witness and
> other anti-abortion activists concerning anti-abortion
> topics;[3] (3) documents and communications between the
> witness and another person concerning Ms. Burkhart, Dr.
> Tiller, or their respective clinics; (4) documents and
> communications regarding the underlying anti-abortion
> events in this case (November 2012 and January and
> February 2013); (5) documents and communications
> relating to anti-abortion events that the witness
> participated in and that were carried out at Ms.
> Burkhart's home or place of business; and (6) all
> documents that the witness referred to or relied on in
> preparing his affidavit in the State Action.

(Doc. 59, at 10; *see also* Doc. 56-2 (Rotola subpoena).)

Motions to quash the subpoenas have been filed by Plaintiff as well as each

of the witnesses. The motions generally argue that the information requested is

---

[3] Plaintiff Mark Holick is specifically listed among the "Anti-abortion/Pro-life activist or leaders" in category No. 2. (*See e.g.*, Doc. 56-2, at 14.)

overly broad, unduly burdensome, harassing, and not proportional to the needs of the case. (*See e.g.* Doc. 57, 58; Doc. 67, at 3-8). Other objections are that Defendant violated Rule 45(c) and failed to provide a reasonable time to comply with the subpoena. (Doc. 56, at 1-4; Doc. 67, at 11-12.)

## ANALYSIS

### I.      Legal Standards.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." ***Layne Christensen Co. v. Purolite Co.***, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting ***Seattle Times Co. v. Rhinehart***, 467 U.S. 20, 36 (1984)).

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

> [a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> > (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
> >
> > (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Thus, the Court must balance Plaintiffs' needs for the information with the potential for undue burden or expense imposed on the third party respondent.

Plaintiff argues that the subpoenas are unduly burdensome, overbroad, irrelevant, disproportionate to the needs of the case, and constitute a fishing expedition "into the private lives of the witnesses and the confidential affairs of the ministries and organizations they represent." (Doc. 56, at 1.) Similar arguments are raised by the recipients of the third-party subpoenas.

"Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, 'this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.'" *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (citing *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013)). Thus, the information sought by the subpoena must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.

Plaintiff also argues that Defendant failed to give timely notice of the subpoenas in violation of Fed.R.Civ.P. 45, which he contends has been problematic because some of the subpoenaed witnesses had not retained counsel by the time

Plaintiff filed the motion to quash. (Doc. 56, at 1-4.) At least one of the remaining third-party witness has raised analogous issues. (Doc. 67, at 11-12.)

Defendant responds that Plaintiff lacks standing to bring the motion to quash. (Doc. 59, at 4.) *See **McDonald v. Kellogg Co.**, No. 08-2473-JWL, 2009 WL 10664465, at *1 (D. Kan. Nov. 5, 2009) ("Only the person or entity to whom a subpoena is directed can seek to quash or modify that subpoena under Rule 45[d]."). Defendant also contends that the notice she provided was sufficient under Rule 45.

## II.    Notice.

Plaintiff's first argument is that the subpoenas should be quashed because proper notice was not given. Fed.R.Civ.P. 45(a)(4) states that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." The Advisory Committee notes to the 2007 Amendment to Rule 45 states that "[c]ourts have agreed that notice must be given 'prior' to the return date, and have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection."

The issue of whether sufficient notice of a non-party subpoena was given to an opposing party was addressed by the Hon. Magistrate Judge Sebelius in the case

of ***Blaser v. Mt. Carmel Reg. Med. Cntr., Inc.***, No. 06-2422-JWL-KGS, 2007 WL

852641 (D. Kan. March 21, 2007).[4]  Magistrate Judge Sebelius held that even

when opposing counsel has not been given sufficient prior notice of a non-party

subpoena,

> such violations of Rule 45(b)(1) do not necessarily
> warrant quashing the subpoena.  Rather, when notice has
> been given after a subpoena is served but before the
> response period has expired, courts generally look to
> whether opposing counsel has had sufficient time to
> object.  Specifically, when opposing counsel has notice
> and sufficient time to object, they are not prejudiced by
> the violation.  In this case, defendant received some,
> albeit insufficient, notice of the subpoena the day the
> subpoena was served on January 17, 2007.  Defendant
> then received actual notice of the subpoena on January
> 22, 2007 – five days after the subpoena was served, but
> eleven days before the date of compliance.  Under these
> circumstances, the court finds that defendant has not
> shown it was prejudiced by this violation, as defendant
> still had sufficient time to object.  As a result, the court
> shall overrule defendant's motion on these grounds.

(*Id.*, at 2.)

In the present situation, Plaintiff received notice of the subpoenas via e-mail

on or about July 18, 2017.  (Doc. 59-1, at 2.)  The subpoenas were dated July 17,

2017.  (*See* Docs. 62-1, 62-2, 62-3, 62-4.)  This clearly does not constitute "prior"

notice.  Even so, Defendant and the third-party witnesses had an adequate, albeit

---

[4] That decision, which was issued prior to the most recent amendments to Rule 45,
noted that "few cases in this district have directly addressed whether notice under [Rule
45] must be provided prior to or contemporaneous to service of a subpoena."  (*Id.*, at 2.)
The Rule has since been modified to state that prior notice is required.

limited, time to object to the subpoenas before the date of compliance – July 31, 2017. Further, Defendant has indicated that deposition dates included in the subpoenas were only "placeholder dates, subject to the attorneys' and the witnesses' availability" and "none have been formally calendared." (Doc. 93, at 5.) That stated, Defendant is instructed to confer with Plaintiff's counsel to schedule these depositions at a time that is mutually agreeable to both parties as well as the witnesses. As such, the Court finds that the issue of notice does not provide a valid basis to quash the subpoenas in question.

## III. Standing.

As this Court has previously held, and as the above-quoted rules infer, "[a] motion to quash or modify a subpoena duces tecum may be made only by the party to whom the subpoena is directed." *Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11–1029–KGG, 2012 WL 3245451, at *2 (D.Kan. Aug. 8, 2012) (citing *Peterbilt of Great Bend, LLC v. Doonan*, 05–1281–JTM, 2006 WL 3193371, at *2 (D.Kan. Nov. 1, 2006) (internal citation omitted)). An exception to this rule is when the party challenging the subpoena "has a personal right or privilege in respect to the subject matter requested in the subpoena." *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D.Kan.1995); *see also* *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D.Kan.1999).

Plaintiff replies that he has standing to move to quash because each of the subpoenas at issue includes Request No. 2, which seeks "all communications from January 1, 2010 to present between you and Anti-abortion/Pro-life activists or leaders, including Mark Holick . . . ." (Doc. 83, at 5; *see also* Doc. 56-2, at 14.) Plaintiff characterizes this as a "sweeping request for 'personal information'" about him and "information in which he has a "personal interest." (Doc. 83, at 5.) He also argues that the remaining 5 requests for production in the subpoena, "while not mentioning [him] by name – nevertheless seek information about and including [him]." (*Id.*, at 5-6.)

Of the six requests submitted to the various witnesses, Plaintiff only has standing as to Request No. 2. That Request seeks communications between the witnesses and other anti-abortion activists concerning anti-abortion topics and specifically lists Plaintiff as one of the activists. Even so, Plaintiff would only have standing to object to as to those communications in which he is included. For instance, Plaintiff has no personal interest in quashing the production of communications between witness Robert Rotola and listed "activist" Cheryl Sullenger.

The Court **GRANTS** Plaintiff's motion regarding Request No. 2 as it relates to communications specifically involving or including him for the reasons set forth in section IV.B., *infra*. Simply stated, the request is facially overbroad and

potentially encompasses a whole manner of irrelevant information.  This finding regarding communications involving Plaintiff applies to all of the witness subpoenas, even those served on the two witnesses who have withdrawn their Motions to Quash.  (*See* n.1, *supra.*)

The Court is unpersuaded by Plaintiff's general statements regarding his interest in the remainder of the information requested from the witnesses.  As the party resisting the discovery, the burden is on Plaintiff to establish that the requests should be quashed.  ***See Sentry Ins. v. Shivers***, 164 F.R.D. 255, 256 (D. Kan. 1996) (holding that the party seeking a protective order or to quash a subpoena has the burden to establish good cause to do so); *cf.* ***Radiologix, Inc. v. Radiology and Nuclear Medicine***, No. 15-4927-DDC-KGS, 2017 WL 1437300, at *4 (D. Kan. April 24, 2017) (citing ***N.U. v. Wal-Mart Stores, Inc.***, No. 15-4885-KHV, 2016 WL 3654759, at *6 (D. Kan. July 8, 2016) (holding that "[t]he party resisting discovery still bears the burden to support its objections") (citing Fed. R. Civ. P. 26(b) advisory committee's note to the 2015 amendment)).

Plaintiff contends that "[t]he other requests for production, 1, 3, 4, 5, and 6 – while not mentioning [him] by name – nevertheless seek information about and including [him]."  (Doc. 83, at 5-6.)  That this oblique assertion (that the information sought by these five other Requests is "about and including" Plaintiff) does not establish standing to ask the Court to quash the subpoenas.  The Court

thus finds that Plaintiff lacks standing to object to Requests 1, 3, 4, 5, and 6 in the subpoenas.

Even so, the subpoenaed witnesses have also moved to quash.[5]  Because Plaintiff and the witnesses have raised virtually the same arguments to the document requests, the issue of Plaintiff's standing becomes somewhat moot.  The Court will address the various objections raised by the third-party witnesses to each particular category of documents requested in the subpoenas.

## IV.    Specific Requests at Issue.

### A.    Documents Prepared by Witnesses Relating to Abortion.

The first document request seeks documents and images that the subpoenaed witness "conceived, authored, drafted, created, selected, compiled, published, or distributed between January 1, 2010 and present that Relate to abortion, Including pamphlets, flyers, letters, signs, manifestos, sermons, speeches, articles, columns, commentaries, interviews, and statements or postings on Social Media."  (Doc. 56-1, at 14.)  Given that these witnesses are pro-life activists, thus engaging in a multitude of communications and activities relating to abortion, this request is facially overbroad.

---

[5]  As stated previously, the Court acknowledges that two of the witnesses (Gittrich and Garren) have reached agreements with Defendant as to the scope of the information requested and have withdrawn their Motions to Quash.

Defendant contends that all six of her Requests are relevant "not only to the specific underlying events, but also to determine Plaintiff's reputation in the community, which he has put at issue directly via his defamation claim." (Doc. 59, at 10.) As written, however, Request No. 1 would encompass all manner of "documents and images" that would in no way relate to Plaintiff or to Defendant Burkhart or to the claims, defenses, and factual allegations in this case.

Defendant also contends that her requests are "relevant to the issue of abortion." (*See* Doc. 80, at 7.) While it may be the case that Defendant's requests are related to the issue of abortion, the Court does not agree that anything and everything related to the all-encompassing issue of abortion (and the various incarnations of related activism) is relevant to this case. Rather, the case is about the claims, defenses, and factual allegations advanced by the parties.

The Court finds that Request No. 1 is facially overbroad and Defendant has failed to meet her burden to establish the relevance of the requested information. *Duffy v. Lawrence Mem. Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 495980, at *3 (D. Kan. Feb. 7, 2017) (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008)). Because the request is facially overbroad, the burden does not shift to the party seeking to resist the discovery, despite Defendant's arguments to the contrary. (*See e.g.*, Doc. 80, at 5.) The Court does not see "the importance of the discovery," as encapsulated in Request No. 1, to the resolution of the issues

in this case.  Fed.R.Civ.P.26(b)(1).  Further, the Court finds that "the burden or

expense . . . the proposed discovery" would have on these third-party witnesses

clearly "outweighs its likely benefit" to Defendant's efforts to defend herself

against Plaintiff's claims.  *Id.*  The Court **GRANTS** the motions of the third-party

witnesses as they relate to Request No. 1.

> ### B.  Communications Between the Witness and Other Anti-Abortion Activists Concerning Anti-Abortion Topics.

Request No. 2 asks for

> [a]ll Communications from January 1, 2010 to present
> between you and Anti-abortion/Pro-life  activists or
> leaders, Including Mark Holick, Chris and Shelly Clegg,
> Bruce Garren, Nicholas Heald, Troy Newman, John
> Pride, Scott Roeder, Robert Rotola, Shelley Shannon, and
> Cheryl Sullenger concerning Anti-abortion/Pro-life
> topics or views, or between you or Concerning Anti-
> abortion/Pro-life organizations, Including Spirit One
> Christian Ministries, Personhood  Kansas, Kansans for
> Life, Operation Save America, Operation Rescue,
> Operation Rescue/Operation  Save America, the Army of
> God, the Kansas Coalition for Life, and Word of Life
> Church Wichita, Kansas.

(Doc. 56-1, at 14.)  As with Request No. 1, this Request, *as worded*, reaches well

beyond the scope of this lawsuit.  That is not to say that somewhere within this

overly broad category of documents there would not be relevant and discoverable

information.  This, however, is the definition of a discovery fishing expedition.

The Court cannot fathom how each and every communication between these

individuals and entities over the past seven years could be relevant to Defendant

Burkhart or the claims, defenses, and factual allegations in this case. The Court cannot see "the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(1). Because the request is facially overbroad, the burden does not shift to the party seeking to resist the discovery. Even so, the "burden or expense of the proposed discovery" to these third-party witnesses clearly "outweigh[s] its likely benefit." The Court thus **GRANTS** the motions of the third-party witnesses as they relate to Request No. 2.

> **C. Documents and Communications Between the Witness and Another Person Concerning Ms. Burkhart, Dr. Tiller, or their Clinics.**

Defendant next asks for "[a]ll Documents and Communications by You, or between You and any Person, Concerning Julie Burkhart, South Wind Women's Center or its employees, Dr. George Tiller, or Women's Health Care Services (Dr. Tiller's clinic) and its employees." (Doc. 56-1, at 14.) Unlike Requests Nos. 1 and 2, *supra*, this request is much more substantively specific, limiting the information requested to that relating to Defendant, Dr. George Tiller, their clinics, and their employees.

Given the factual allegations, claims, and defenses in this case, however, the Court finds that all such documents relating to Dr. Tiller, his clinic, and/or his employees go beyond what is relevant and/or proportional to the needs of the case. (*See* Doc. 1, Complaint; Doc. 6, Memorandum in Support of Defendant's Motion

to Dismiss; Doc. 19, Memorandum & Order on Defendant's Motion to Dismiss.)
Simply stated, such information is not important to resolving the issues in this case.
Fed.R.Civ.P. 26(a)(1).

Such information regarding Defendant Burkhart, on the other hand, is
relevant and its discovery is important to resolving the issues in this case. The time
frame stated in the subpoena (which encompasses approximately 17 years –
"[u]nless otherwise specified, these Requests cover the period January 1, 2000
through the present") makes the request temporally overbroad, however. The
Court thus limits Request No. 3 to documents and communications by or involving
the subpoenaed party concerning Defendant Burkhart, South Wind Women's
Center, or its employees, for the time period of January 1, 2010, through the
present. The Court acknowledges that the seven year time frame is extensive.
Given the dates of events at issue in the underlying state court action, however, the
Court finds such a time frame to be reasonably limited. The motions of the third-
party witnesses are **GRANTED in part** and **DENIED in part** as to Request No. 3.

### D. Documents and Communications Regarding the Underlying Anti-Abortion Events.

Request No. 4 seeks "Documents and Communications posted on Social
media, photographs, videos, and audiorecordings, Related to the Anti-abortion/Pro-
life Activities" held on November 17, 2012, outside Defendant's home, January
2013 outside Defendant's place of business, and on February 15, 2013, outside

Defendant's home.  (Doc. 56-1, at 15.)  The Court finds this request to be narrowly drawn and specifically tailored to the allegations, claims, and defenses of this case. The various motions are **DENIED** as to Request No. 4.

### E.     Documents and Communications Relating to Anti-Abortion Events at Defendant's Home or Place of Business.

Request No. 5 asks for documents and communications regarding "Anti-Abortion/Pro-life Activities that You organized or participated in and that were carried out near Defendant's business . . . or private residence, Including Your preparation for such Activities and the creation of any signage or similar materials to be used in such Activities."  (Doc. 56-1, at 15.)  The Court finds this Request to be specifically tailored to the allegations, claims, and defenses of this case as it is limited to the time period of January 1, 2010, through the present.  The various motions are **DENIED** as to Request No. 5.

### F.     Documents Used in Preparing State Action Affidavits.

Finally, Defendant requests all documents "referred to or considered in connection with Your . . . affidavit in the related state litigation, Burkhart v. Holick, 13-DM-1453 (Kan. Dist. Ct.)."  (Doc. 56-1, at 15.)  The Court finds this Request to be narrowly drawn and specifically tailored to the allegations, claims, and defenses of this case.  The various motions are **DENIED** as to Request No. 6.

## IV.    Time & Place of Production.

Witness John Pride objected that Defendant violated the geographical limits of Rule 45(c). (*See e.g.*, Doc. 67, at 11-12.) The affidavits at issue were confusing in that they provided an address for production in Washington, D.C., but also stated that if the documents were sent by "regular mail," they were to be sent to an address in Wichita, KS. (Doc. 62-2, at 1, 10; Doc. 62-4, at 1, 10.) Fed.R.Civ.P. 45(c)(2) states that a subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Tangible documents therefore are to be produced in Wichita, Kansas. If the documents are being produced via e-mail, however, there is no additional burden on the witnesses to produce the documents to the e-mail address of counsel in Washington, D.C.

Pride also complained that the 12 day period they were allotted to comply with the subpoena was insufficient given the "extensive" nature of the requests.[6] (Doc. 67, at 12.) The Court agrees and will allow the witnesses thirty (30) days to comply with the subpoena requests, as revised and narrowed by this Order. These portions of the Motions to Quash are **GRANTED**.

**V.     Plaintiff's Amended Motion for Protective Order (Doc. 71).**

---

[6] Plaintiff raised a similar objection to the subpoenas in his Motion to Quash. (*See* Doc. 56, at 1-4.)

Plaintiff has also filed an Amended Motion for Protective Order. (Doc. 71.) As stated by Defendant, it appears that this was done by Plaintiff in an effort "to circumvent his lack of standing for his nearly identical Motion to Quash Third Party Subpoenas." (Doc. 93, at 2.) The Court agrees that the arguments contained in the two motions are virtually identical. (*Compare* Doc. 56 *with* Doc. 71.) Further, the Motion for Protective Order addresses the issue of standing (Doc. 71, at 2-3, 6), which is also addressed in Plaintiff's reply to his Motion to Compel (Doc. 56, at 5-10).

The Court finds that the issues raised by Defendant's Motion for Protective Order have been adequately addressed in this Order in the context of the Court's rulings on the Motions to Quash filed by Plaintiff and the third-party witnesses. The Court sees no reason to give Plaintiff a second bite at the apple. Plaintiff's motion (Doc. 71) is, therefore, **DENIED as moot**.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Quash (Doc. 56) is **GRANTED in part** as to Request No. 2 contained in all of the third-party witness subpoenas, as more fully set forth above. The remainder of Plaintiff's Motion to Quash is **DENIED**.

IT IS FURTHER ORDERED that the remaining Motions to Quash filed by third-party witnesses Robert Rotola, (Doc. 57), Word of Life Church (Doc. 58),

and John Pride (Doc. 67) are **GRANTED in part** and **DENIED in part** as more fully set forth above.

IT IS FURTHER ORDERED that Plaintiff's Amended Motion for Protective Order (Doc. 71) is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated this 29th day of August, 2017, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE