# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARK HOLICK,               )
                           )
        Plaintiff,      )
                           )
v.                         )   Case No. 16-1188-JTM-KGG
                           )
JULIE A. BURKHART,         )
                           )
        Defendant.      )
_____ )

## MEMORANDUM & ORDER ON MOTIONS TO COMPEL

Now before the Court is Plaintiff's "Amended Motion to Compel Reasonable Production of Documents" (Doc. 115) and the "Motion to Compel Plaintiff to Answer Certain Requests for Production and Interrogatories" filed by Defendant (Doc. 118). Having reviewed the submissions of the parties, including the discovery responses of the parties, the Court is prepared to rule.

## FACTS

In 2013, Defendant received a temporary order of protection from stalking against Plaintiff in Kansas state court (state court action). Plaintiff, who is a resident of Oklahoma, brings the present matter alleging malicious prosecution and abuse of process against Defendant, a Kansas resident, relating to the allegations levied against him in the state court action. (See generally, Doc. 84.)

1

In regard to the malicious prosecution claim, Plaintiff alleges that Defendant "lacked probable cause for the false allegations, did not take reasonable measures to ascertain the veracity of said allegations, and was reckless and intentional in filing the false stalking charges against [him]." (Doc. 84, at 6.) As for the abuse of process claim, Plaintiff contends that Defendant "acted in a false and improper manner in the prosecution of a regular proceeding under Kansas law for anti-stalking against" Defendant. (*Id*., at 7.) Plaintiff continues that "[t]he use of substantial falsehoods, speculation and mere suspicion, without probable cause, to obtain an anti-stalking order is improper, illegal, and unauthorized by law." (*Id*.)

Plaintiff alleges that over the course of two years, Defendant

> continued the temporary order against [him] and did not make it a permanent injunction. As late as January 2015, defendant attempted to influence the Wichita police to arrest Mark Holick for violating the anti-stalking order. The filing of the petition and false accusations of 'stalking' caused extensive negative media publicity about him.

(*Id*., at 5-6.) Plaintiff alleges that this "curtailed or reduced his First Amendment and religious expressive activities" and caused him to fear "for his safety." (*Id*., at 5.) Plaintiff continues that "[u]ltimately, when faced with a motion for summary judgment by [Plaintiff], [Defendant] voluntarily dismissed her stalking case, leaving [Plaintiff] as the prevailing party." (*Id*., at 6.) He contends that "[t]he initiation, continuation or procurement of the 'anti-stalking' order, based on

2

complete falsehoods, caused [him] to incur tens of thousands of dollars in attorney fees." (*Id*.)

In the affirmative defenses contained in Defendants Answer to the Complaint, Defendant contends the statements in her state court petition were true and "in good faith pursuant to a legitimate interest, which is her safety; the statements were limited to those necessary to uphold her interest; and the statements were made in a proper manner to a proper party, the state." (Doc. 20, at 7; *see also* Doc. 97, at 1 (Answer to Amended Complaint incorporating Answer to original Complaint.)  Defendant contends that she feared for her safety given the allegedly threatening nature of Plaintiff's statements and actions. (*Id*.)

## ANALYSIS

**A.     Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

**B.     Plaintiff's Amended Motion to Compel (Doc. 115).**

Plaintiff "moves the Court for an order compelling [D]efendant to make proper production of documents in response to plaintiff's second Requests for Production . . . ."  (Doc. 115, at 1.)  Plaintiff argues that Defendant's document production was done in a manner that was not compliant with Fed.R.Civ.P. 34.  It is uncontroverted that the documents, numbering approximately 20,000 pages, were submitted as encrypted ZIP files.[1]  According to Plaintiff, "no instructions were provided about how to remove the password or how to extract the documents without manual entry of the password every time for each [document]."  (Doc. 115, at 1.)  Plaintiff argues that the documents "were neither organized according to plaintiff's numbered requests for production, nor were they organized as they would be kept in a regular office file, i.e., as they would be reasonably maintained in the usual course of business."  (*Id.*, at 2.)  According to Plaintiff, "the files were

---

[1] The parties have offered to provide a copy of the ZIP file to the Court, which will be unnecessary.

encrypted with a 'strong password.' Requiring entry of that strong password before access to each file, or to thousands of individual documents, is not reasonable by any standard, and was done to frustrate the recipient's ability to examine" the documents. (*Id*., at 3.)

Defendant responds that this issue has been resolved. "Having learned of Plaintiff's technical difficulties for the first time on October 9, defense counsel informed Plaintiff's counsel, via step-by-step instructions, how to properly extract the documents on the next business day." (Doc. 121, at 5.) Defendant contends that a meet and confer session, in compliance with Fed.R.Civ.P. 37 and D. Kan. Rule 37.2, would have made this portion of Plaintiff's motion unnecessary. (*Id*., at 6.)

Plaintiff replies that "[h]ad there been no password problems at all, the dump of thousands of pages of non-responsive documents was, nevertheless, improper, harassing, and unduly burdensome." (Doc. 129, at 9.) In other words, Plaintiff accuses Defendant of intentionally providing a "document dump" – voluminous documents of limited relevance in an effort to obscure relevant information. "Defendant . . . front loaded her production with thousands of pages that had only a remote connection those requests, if any . . . ." (Doc. 115, at 4, 5.) Plaintiff contends the document production was not done in "good faith." (*Id*., at 4.)

Plaintiff contends that defense counsel subsequently informed him that the actual number of documents responsive to Requests 1-10 and 16-23 – which Plaintiff contends related to him, his former church, and "specific events at issue in the lawsuit – "***was less than a handful***." (*Id*., at 4 (emphasis in original).)  In the initial (subsequently amended) motion regarding this issue, in an effort to simplify the document production, Plaintiff offered to withdraw Requests 11-15, which he described as "not linked to the events and entities at issue." (Doc. 110, at 3.) Plaintiff now rescinds the offer to withdraw Requests Nos. 11-15, instead proposing that

> Defendant should be directed to produce separately the 'handful of documents' referenced as responsive to RFP's one through ten and sixteen through twenty-three. Those documents should be labeled and organized to correspond to the numbered categories specified in plaintiff's requests for production, to assist all parties and the Court in determining which documents are truly probative and meaningful, without needless, time-consuming efforts, technical burdens, and obstructive tactics.  Given the revelations by defense counsel cited above, plaintiff withdraws his offer to drop RFP's eleven through sixteen.  Defendant should be directed to clean up and limit that production to documents that defendant actually read or authored and which are directly related to issues in this case.

(Doc. 115, at 5.)

Defendant responds that she

> voluntarily agreed to make a narrow re-production of Defendant's social media posts that excluded any posts

6

> responsive only to Requests 11-15, which – as Plaintiff acknowledged in his original Motion to Compel (the 'Original Motion,' ECF 110) – are facially overbroad. Even though Plaintiff stubbornly refuses to withdraw these requests, as a practical matter, the relief he seeks through this Motion appears to be materially identical to what Plaintiff has already offered.

(Doc. 121, at 1.)  Defendant continues that the Amended Motion is "meritless."

> In his Amended Motion, Plaintiff retracts his voluntary withdrawal of these 'generic' requests [Nos. 11-15], but nonetheless seeks an order compelling Defendant to only produce documents that are 'directly related to the issues in this case.' ECF 115 ¶ 11.  Plaintiff cannot have it both ways.  If he desires to pursue discovery requests for all social media posts related to 'abortion,' than [sic] he cannot complain that Defendant – who runs a reproductive health clinic and is an advocate for reproductive choice – produced a large set of responsive documents.  If Plaintiff truly seeks to narrow or withdraw these requests, he does not need a Court order to do so. Plaintiff has simply decided to stand in his own way.

(*Id*., at 2.)

The Court is confused as to why Plaintiff is seemingly criticizing his own discovery requests (Requests Nos. 11-15) by describing them as "generic" and "not directly related to the specific issues of the case."  (Doc. 115, at ¶ 9.)  It is nonsensical for Plaintiff to submit discovery requests that include document requests that he all but characterizes as irrelevant and then complain that the responsive documents produced contain an abundance of documents with a

7

"remote connection" to the events at issue in this litigation.  The Court notes that Defendant initially objected that these requests were overly broad.

Even so, the Court is sympathetic to Plaintiff's concerns, particularly given the volume of documents produced and the fact that they were not organized according to Plaintiff's numbered requests for production and apparently were not organized as they would be kept in the usual course of business.  As such, the Court orders Defendant to provide Plaintiff with supplemental responses to Requests 1-10 and 16-23, indicating by page number which documents are responsive to these particular, numbered discovery requests as required by Fed.R.Civ.P. 34(b)(2)(E)(i).  Plaintiff's motion (Doc. 115) is, therefore, **GRANTED in part**.

C.     **Defendant's Motion to Compel (Doc. 118).**

Defendant brings this motion seeking to compel Plaintiff to provide supplemental responses to Defendant's Requests for Production 27-29 and Interrogatories 17-20.  The discovery requests will be addressed in turn.[2]

1.     **Requests for Production Nos. 27 and 28.**

Request No. 27 seeks

> The native files of 'Holick Attorney Time' for 2013, 2014, and 2015, previously produced in PDF format with

---

[2] The Court notes Defendant's request that the Court hear oral argument on this motion.  That request is **DENIED**.

> Plaintiff's expert disclosures . . . Including metadata that shows, as to each file: (i) the Date the original document was created; (ii) the author(s) of the original document; (iii) the Date(s) the document was accessed or edited, and by whom; and (iv) what if any alterations have been made to the document since it was created, and the Date of such alterations.

(Doc. 119-1, at 7.)  Request 28 asks for

> Documents Relating to payment of Your legal fees in connection with Your defense in Burkhart v. Holick, No. 13-DM-1453 (Kan. Dist. Ct.) (the state court stalking case), Including bills, invoices, receipts, checks, and records of financial transfers to or from You, Your counsel, or any other Person for the purpose of requesting or tendering payment of legal fees.

(*Id.*)  Defendant contends the requests are "relevant to [her] evaluation of Plaintiff's damages assertions," because "Plaintiff is now claiming $150,000 in damages for attorney's fees and legal expenses incurred in the underlying State Action, which concluded in 2015."  (Doc. 119, at 3.)  Defendant contends she needs to "evaluate *all* the original bills, invoices, receipts, checks, and other documents related to those fees" as well as "the metadata of the attorney time sheets Plaintiff produced to determine if, how, and when those claimed fees changed."  (*Id.*, at 4.)

Defendant argues that the documents do not seek privileged information because the attorney time sheets have already been produced.  (*Id.*)  As for the thus-unproduced metadata, Defendant states that "[m]etadata records certain facts

9

about the document itself, such as the time of its creation and its author; accordingly, they are not communications made for the purposes of giving or receiving legal advice." (*Id.*, at 5.) Defendant also argues that Request No. 27 is not burdensome because it seeks metadata for only three, easily identifiable documents that are already in Plaintiff's possession and would not require Plaintiff to create new documents. (*Id.*, at 6-7.)

Plaintiff relies on language from the Scheduling Order stating that the parties "do not expect at this time to have any need for the production of metadata." (*See* Doc. 124, at 5; Doc. 28, at 5; Doc. 102, at 4.) The Court finds this argument to be unpersuasive. Nothing in this specific language or the Scheduling Order generally forecloses either party's need to seek metadata should it be deemed necessary. The Court notes that when relevant and proportional to the needs of the case, metadata is generally discoverable. *See* **Helget v. City of Hays, Kansas**, 300 F.R.D. 496, 503 (D. Kan. 2014). Given that there seems to be a dearth of information regarding Plaintiff's legal fees, the Court finds Defendant's request to be reasonable. This portion of Defendant's motion (Doc. 118) is **GRANTED**.

As to Request No. 28, Defendant argues that the responsive documents submitted by Plaintiff contain improper redactions. (Doc. 119, at 7.) Defendant argues that the redactions of the memo lines on 9 pages of photocopied checks are improper because this "mak[e] it impossible to ascertain the purpose of the check."

10

(Doc. 119, at 7.)  Further, "[t]he recipient's name and amount of payment have been redacted on other checks." (*Id.*)  Defendant asks that unredacted copies of the documents be produced.

Plaintiff responds that the checks

> do contain redactions of the payee and amount of
> payment have nothing to do with this case.  They only
> appear because they are on the same page in the banking
> records as the relevant checks for attorney fees.
> [Plaintiff] simply did not take the time to cut out all of
> the irrelevant checks, so that he could avoid working
> with small scraps of paper.

(Doc. 124, at 2.)  The Court finds that Plaintiff's redactions on such unrelated checks are appropriate.  The Court also finds any redactions of banking information to be appropriate.

As to the second check on Doc. 119-4, at pg. 3, Plaintiff contends that the redactions to the memo line "involve instructions by [Plaintiff] to his attorney about strategy and work that he expected his attorney to perform on the case," and are thus privileged.  (Doc. 124, at 2.)  Plaintiff contends the same as to the check at pg. 7 dated November 6, 2013.

Defendant correctly argues, however, that this information cannot be considered privileged because it is not confidential.  (Doc. 127, at 14, citing ***In re Qwest Commcn's Int'l Inc.***, 450 F.3d 1179, 1185 (10th Cir. 2006).)

> Disclosure to a third-party waives the attorney-client
> privilege.  *Id*.  In light of this fundamental rule, there is

11

> no question that the memo line of a cashed check is not privileged.  There is no expectation of privacy in a check, which is a negotiable instrument that is 'voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.'  ***United States v. Miller***, 425 U.S. 435, 442 (1976).  Thus, 'cancelled checks and bank statements are not within the attorney-client privilege.'  ***United States v. Judson***, 322 F.2d 460, 463 (9th Cir. 1963); *see also* ***United States v. Werner***, 442 F. Supp. 238, 241 (S.D.N.Y. 1977) ('We take notice of the fact that cancelled checks necessarily must be seen by parties other than the [client] and his attorney.').

(Doc. 127, at 14.)  The Court agrees with this analysis and **overrules** Plaintiff's attorney-client privilege objection as to information contained on these checks.  This portion of Defendant's motion is **GRANTED**.

Defendant also argues that the response to Request No. 28, which includes an objection, does not comply with Fed.R.Civ.P. 34(b)(2)(C) because it fails to identify "whether any responsive materials are being withheld on the basis of that objection."  (Doc. 119, at 8.)  Defendant contends she has "ample reason to believe that the nine pages of checks produced by [Plaintiff] do not constitute all responsive materials."  (*Id.*)

"The 2015 amendments to Rule 34 now require an objecting party to 'state whether any responsive materials are being withheld on the basis of that objection.'"  ***Rowan v. Sunflower Elec. Pwr. Corp.***, No. 15-9227-JWL-TJJ, 2016 WL 3743102, at *3 (D. Kan. July 13, 2016) (quoting Fed.R.Civ.P. 34(b)(2)(C)).

12

> This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'

*Id.* (quoting Fed.R.Civ.P. 34 advisory committee's note to 2015 amendment).  This portion of Defendant's motion is **GRANTED**.  Plaintiff is instructed to provide a supplemental response to Request No. 28 stating whether he is withholding any documents on the basis of an objection.

### 2. Interrogatory No. 17.

This Interrogatory asks Plaintiff

> [f]or any legal fees that have been paid for Your defense in connection with Burkhart v. Holick, No. 13-DM-1453 (Kan. Dist. Ct.) (the state court stalking case), Identify the source of payment (i.e., You or a Person that paid on Your behalf), the Date of payment, the amount of payment, the method of payment, and the recipient.

(Doc. 119-2, at 6.)  In response, Plaintiff directs Defendant to "[s]ee checks provided in response to RFP [28]."  (Docs. 119, at 9, 119-3, at 7.)  Defendant argues this response is "incomplete" for the reasons discussed in regard to Request No. 28, *supra*.  Plaintiff is instructed to supply a supplemental response to

13

Interrogatory No. 17 that complies with the Court's rulings regarding Request No. 28, *supra*, stating whether he is withholding any documents on the basis of an objection.

### 3. Interrogatory No. 18.

Interrogatory No. 18 reads as follows:

> For any legal fees that have not been paid for Your defense in connection with Burkhart v. Holick, No. 13-DM-1453 (Kan. Dist. Ct.) (the state court stalking case), describe the efforts made by Your counsel in that case to collect payment or any payment arrangement between You, Your counsel, or any other Person regarding outstanding legal fees.

(Doc. 119-2, at 6.) Plaintiff objects that the interrogatory calls for communications protected by the attorney-client privilege. Without waiving his objections, Plaintiff continues that

> Mr. McKinney has requested of me many times for more payments for the stalking case. More times than I can recall. My best recollection is that Mr. McKinney has asked me 15 different times or more for various amounts to be paid toward his attorney fee on that case. In response, I have made numerous payments to him over the years.

(Doc. 119-3, at 8.) Plaintiff also refers to the checks produced in response to Request No. 28, which Defendant finds improper for the reasons discussed *supra*. (Doc. 119, at 10.) Defendant argues that this response is "at best partially responsive" because the interrogatory seeks "information about any 'payment

14

arrangement' for 'legal fees *that have not been paid*,' ([Doc. 119-2, at 6] (emphasis added), which Plaintiff failed to address." (Doc. 119, at 11.)

Plaintiff contends that his response is complete and appropriate because "[t]here were no bills or invoices sent." (Doc. 124, at 12.) Rather, "plaintiff's counsel in the underlying case verbally asked [Plaintiff] to send a payment, often advising him of the increasing amount of attorney fees and the totals. The payments that Mr. Holick made to date have been produced in the form of canceled checks." (*Id.*) As to unpaid legal fees, Plaintiff contends that this information has been produced in the form of "bills for 'Holick Attorney Time' produced for 2013, 2014, and 2015," which "show the total amount of billing maintained by plaintiff's counsel and were also produced to plaintiff's expert witness, Craig Shultz." (*Id.*) Plaintiff continues that "[t]he only agreement to pay legal fees was a verbal agreement that plaintiff would continue to make payments on the attorney fee as he was able. (*Id.*, at 13.)

Plaintiff is instructed to supply a supplemental response to Interrogatory No. 18 that complies with the Court's rulings regarding Request No. 28, *supra*, stating whether he is withholding any documents on the basis of an objection. The supplemental response should also include Plaintiff's explanation quoted in the preceding paragraph.

**4.     Discovery requests regarding employment history and search.**

15

Request No. 29 and Interrogatories 19 and 20 "seek information regarding [Plaintiff's] own work history and efforts to obtain employment after 2013." (*Id*., at 11-12.) Request No. 29 asks for "[a]ll Documents Relating to Your efforts to obtain employment (whether full-time, contract, or volunteer) or pursue job opportunities after March 2013, Including job applications and Communications with potential employers." (Doc. 119-1, at 8.) Plaintiff objected that because he "has dropped his claim for loss of income," this document request seeks information that is irrelevant and disproportionate to the case. (Doc. 119-3, at 5.) Plaintiff provided no documents responsive to Request No. 29. (*Id*.)

Interrogatory No. 19 asks Plaintiff to "[i]dentify the places where You applied for employment . . . after March 2013" and to provide certain supporting information such as the name of the organization, who he interacted with, anticipated compensation, whether he was offered a position, etc. (Doc. 119, at 11.) Interrogatory No. 20 seeks information related to jobs Plaintiff has held from January 2007 through the present, including where and when he was employed as well as his job title and responsibilities. (*Id*., at 12.) Plaintiff objected that the interrogatories called for "speculation on certain matters" and sought irrelevant and disproportionate information because he "dropped his claim for loss of income . . . ." (Doc. 119-3, at 9.)

        a.      **relevance objection.**

Plaintiff contends these topics are irrelevant because he has withdrawn his claim for lost income. (Doc. 119-3, at 4, 8.) Defendant contends that the information is still relevant because Plaintiff's damages – apart from lost income – include "loss of time," "moving expenses," and "loss of chosen profession/career," which includes lost value of his education as a minister. (Doc. 65-5, at 1-2.) To the extent Plaintiff still seeks these categories of damages, the requests at issue are relevant and Plaintiff is instructed to provide responses to the same.

Plaintiff responds that

> [t]hese items are all distinct from any claims for loss of a job and related income loss, and are independent of any employment history of plaintiff. For example, the value of this time loss of time may be measured by minimum wage or through juror's understanding of the value of time, without tying it to any particular job ever held by [Plaintiff].

(Doc. 124, at 14.)

Plaintiff's damages include elements relating to his inability to continue his career and his inability to find work, including the apparent need to move as a result. As a result, the Court finds the requested information to be both relevant and proportional to the needs of the case. Plaintiff's relevance objections as to these discovery requests are **overruled** and this portion of Defendant's motion is **GRANTED**.

      b.    speculation.

As stated by Defendant, the discovery requests seek information about Plaintiff's job search and employment history.  As such, Plaintiff should have sufficient personal knowledge to provide non-speculative responses to these discovery requests.  Obviously, Plaintiff is only compelled to provide the knowledge and information he possesses.  Plaintiff's objections as to the speculative nature of these discovery requests are **overruled** and this portion of Defendant's motion is **GRANTED**.

IT IS THEREFORE ORDERED that Plaintiff's Amended Motion to Compel (Doc. 115) is **GRANTED in part** as more fully set forth above.

IT IS FURTHER ORDERED that Defendant's Motion to Compel (Doc. 118) is **GRANTED in part** as more fully set forth above.

**IT IS SO ORDERED.**

Dated this 11th day of January, 2018, at Wichita, Kansas.

S/ KENNETH G. GALE  
HON. KENNETH G. GALE  
U.S. MAGISTRATE JUDGE