IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARK HOLICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-1188-JTM-KGG |
| | ) |
| JULIE A. BURKHART, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER ON MOTIONS

Now before the Court are Defendant's Motion to Quash Non-Party Depositions (Doc. 149) and Motion to for Leave to File Under Seal (Doc. 151). Having reviewed the submissions of the parties, Defendants motions are **GRANTED** as more fully set forth below. The Court also **DENIES as moot** Plaintiff's Motion to Strike Defendant's reply brief (Doc. 177).

## FACTUAL BACKGROUND

In 2013, Defendant received a temporary order of protection from stalking against Plaintiff in Kansas state court (state court action). Plaintiff, who is a resident of Oklahoma, brings the present matter in federal district court alleging malicious prosecution and abuse of process against Defendant, a Kansas resident, relating to the allegations levied against him in the state court action. (See

1

generally, Doc. 84.)  Facts relevant to the individual motions will be summarized in the context of the relevant motion, below.

**I.     Defendant's Motion to Quash Non-Party Depositions (Doc. 149)**

Plaintiff seeks to depose Robert Eye and Erin Thompson, both of whom served as legal counsel for Defendant during the state court action.  Defendant moves to quash the depositions, contending that "[a]ny knowledge about the underlying state action possessed by counsel that is relevant to [Plaintiff's] claims and defenses is unquestionably privileged."  (Doc. 150, at 1.)  Defendant notes that "the operative Complaint in this case contains no allegations of a 'conspiracy' to abuse legal process or engage in malicious prosecution."  (*Id*., at 2.)  Plaintiff has since, however, filed a Motion to Amend that, in part, seeks to add a claim for civil conspiracy and fraudulent conduct.  (*See generally* Doc. 152; Doc. 152-1, at 10-11.)  That motion will be decided by separate Order.

Plaintiff states that he has a "good-faith belief that defendant initiated the false stalking accusation" against him "due to the planning, recommendation, and strategy of the . . . attorneys . . . ."  (Doc. 158, at 1.)  He responds that he wants to depose Defendant's attorneys "who recommended strategy to [Defendant] **before** she filed the accusations of stalking against [Plaintiff] in state court."  (*Id.* (emphasis in original).)  Plaintiff contends that he "does not seek to depose these attorneys concerning their knowledge about the underlying state action after that

action was commenced in March 2013." (*Id*., at 1-2.)  Rather, he wants to question them "regarding their role in their conspiracy" with Defendant to bring "phony" stalking charges against Plaintiff in state court. (*Id*., at 2.)

### A. Standards for Discovery and Motions to Quash.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).  Pursuant to Fed. R. Civ. P. 45(d)(3)(A), the court for the District where compliance is required must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

Defendant argues that Plaintiff

> presumably seeks to depose state counsel as to why
> [Defendant] sought a PFS order and what information
> she received from counsel prior to filing.  This
> information – consisting of confidential communications

3

> made for the purposes of giving and receiving legal advice about a possible claim or remedy – falls squarely within the scope of attorney-client privilege under Kansas law.

(Doc. 150, at 5.)  Defendant continues that Plaintiff cannot identify an exception to the privilege that would allow the information to be discovered.  (*Id.*, at 6.)

Plaintiff responds that because Defendant has admitted that certain related e-mails are nonprivileged communication, he "should be permitted to depose Thompson, Eye, and Gaines about those emails, their contents, and the circumstances surrounding those communications."  (Doc. 158, at 5.)  Plaintiff also contends that the crime/fraud exception to the attorney-client privilege makes the information discoverable.  (*Id.*, at 6.)

### B.   Depositions of Counsel.

As a general rule, "[c]ourts do not favor thwarting a deposition." ***Mike v. Dymon, Inc.***, 169 F.R.D. 376, 378 (D.Kan.1996) (citing ***Leighr v. Beverly Enterprises–Kansas Inc.***, 164 F.R.D. 550, 552 (D. Kan. 1996)). Courts in this District have addressed the issue of a party seeking to depose opposing counsel, holding generally that "[a]n attorney, even an attorney for a party to the suit, is subject to being deposed." *Id*. (quoting ***Kelling v. Bridgestone/Firestone, Inc.***, 153 F.R.D. 170, 171 (D.Kan.1994)).

"Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition." ***Simmons Foods, Inc. v. Willis***, 191

F.R.D. 625, 630 (D. Kan. 2000) (citation omitted).  "'A request to take the deposition of a party's attorney, however, constitutes a circumstance justifying departure from the normal rule.'"  *Phoenix Mut. Life Ins. Co. v. College Court*, No. 92-2254-KHV, 1993 WL 841191, at *1 (citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C.1987)).

"While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."  *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990)).  Thus, Courts "generally prohibit the deposition of counsel for a party, unless the party seeking the deposition shows that: (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Dymon*, 169 F.R.D., at 378; *see also* *Shelton v. American Motors Corp*., 805 F.2d 1323, 1326 (8th Cir.1986).

It is undisputed that the very limited e-mail communication from counsel that has been produced is non-privileged, satisfying the second criteria.  The Court will assume, for the sake of this Order, that the "information is crucial to the preparation" of Plaintiff's case.  Plaintiff cannot establish, however, that depositions of these attorneys are the only source for this information as the other

5

individuals in the email chain are able to be deposed. Under these circumstances, the Court finds that the depositions of Defendant's attorneys should not go forward.[1]

## C.     Application of the Crime/Fraud Exception.

Under Kansas law, the crime/fraud exception to the attorney-client privilege applies to communications with attorneys who aid or enable the commission of torts by the client or others. *See* K.S.A. § 60–426(b). Plaintiff argues that Defendant "committed a fraud on the state court by lying in her verified petition." (Doc. 158, at 9.)

The parties disagree as to whether federal or state law governs the crime-fraud exception to the attorney-client privilege. Pursuant to the Federal Rules of Evidence, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed.R.Evid. 501. Because this underlying claim is based on diversity rather than federal law, Kansas privilege law governs.

This District has determined, however, that the approach to the crime-fraud exception is analogous under Kansas and federal law. *See* ***Berroth v. Kansas Farm Bureau Mutual Ins. Co., Inc.***, 205 F.R.D. 586 (D.Kan. 2002). The ***Berroth*** court held

---

[1] Further, case law suggests that even if all three of these factors are met, a court may still prohibit such depositions. ***Simmons***, 191 F.R.D., at 630 (citing ***Boughton v. Cotter Corp.***, 65 F.3d 823, 829–31 (10th Cir.1995)).

> [u]nder Kansas law, the attorney-client privilege does not extend 'to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort.' K.S.A. 60–426(b)(1). 'Sufficient evidence' for purposes of the crime-fraud exception is 'that which constitutes a *prima facie* case.' **Burton v. R.J. Reynolds Tobacco Co.**, 177 F.R.D. 491, 501 (D.Kan.1997) (citing **Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.**, 250 Kan. 54, 61, 824 P.2d 933, 939 (1992)). A *prima facie* case consists of 'evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports.' **Wallace, Saunders**, 250 Kan. at 61, 824 P.2d at 939 (quotation omitted).

Id., at 589.  **Berroth** addressed the issue under federal law as well, holding that the

> 'attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud.' **Motley** [**v. Marathon Oil Co**., 71 F.3d 1547, 1551 (10th Cir.1995)] (quotation omitted).  The party claiming the exception applies 'must present *prima facie* evidence that the allegation . . . has some foundation in fact.' *Id*.  The trial court has discretion to determine whether the party has established a *prima facie* case, *id*. . . .

*Id*.

Given this context, the **Berroth** court was

> guided by the principle that, at a bare minimum, **before the court even has an obligation to consider whether to conduct an *in camera* review of the privileged material, the party invoking the crime-fraud exception must make a threshold showing of a factual basis that is 'adequate to support a good faith belief**

7

> **by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.'** *Zolin*, 491 U.S. at 572, 109 S.Ct. 2619 (internal citations and quotations omitted); *accord* **Burton v. R.J. Reynolds Tobacco Co.**, 167 F.R.D. 134, 141 (D.Kan. 1996) (citing ***Zolin***).

*Id.* (emphasis added). The Court thus finds the standard to be consistent under federal and Kansas law.

Plaintiff contends that "[t]he communications between [Defendant] and Thompson, Eye, and the Feminist Majority Foundation resulted in false legal charges being filed, and torts committed, against [him]." (Doc. 158, at 10.) Plaintiff continues that

> the evidence here is overwhelming that none of the advisors and attorneys who participated in framing the false accusations by [Defendant] against [Plaintiff] had ever been advised of all the 'facts known to the defendant' or 'all facts the defendant could have learned by diligent effort.' To the contrary, the lack of accurate and adequate factual information supports the *prima facie* case that [Defendant] knowingly conspired with her attorneys to obtain a false stalking order against [Plaintiff], whether those attorneys were fully informed or not. They had a duty to make diligent inquiry into those facts, and to get straight answers from [Defendant], before assisting her in filing false pleadings in state court against [Plaintiff].

(*Id.*, at 11.)

Plaintiff's argument contradicts itself. On one hand, he says that Defendant failed to advise her attorneys of all the facts she knew or "could have learned by

8

diligent effort." On the other hand, Plaintiff argues that this lack of information supports a *prima facie* case that the crime-fraud exception to the attorney-client privilege should be applied. Assuming for the sake of argument Plaintiff's contention that there was a dearth of information provided to Defendant's counsel, this would appear to make the likelihood of a concerted effort involving defense counsel to commit fraud or other wrongs against Plaintiff *less* likely.

Regardless, the Court finds that Plaintiff has failed to make a threshold showing of a factual basis that the crime-fraud exception applies to Defendant's communications with counsel. Plaintiff's Motion to Quash (Doc. 149) is **GRANTED**.[2]

## II. Defendant's Sealed Motion to File Under Seal (Doc. 151, sealed).

Defendant moves, pursuant to D. Kan. Rule 5.4.6 for an Order allowing her to file under seal an exhibit to her Motion to Quash Non-Party Depositions (*supra*). Defendant contends that if disclosed, the exhibit, which consists of her "confidential emails . . . could jeopardize the safety of [Defendant] or other individuals named in the emails and/or expose them to an increased risk of harm." (Doc. 151, sealed, at 1, citing ***Judicial Watch, Inc. v. FDA***, 449 F.3d 141, 153 (D.C. Cir. 2006) (finding that privacy rights warranted the sealing of

---

[2] Because the Court did not rely on any of the arguments contained in Defendant's reply brief (Doc. 164) in reaching this conclusion, the Court **DENIES as moot** Plaintiff's motion to strike the reply brief (Doc. 177).

identifying information for individuals involved in the approval process for a drug used to terminate pregnancy).)

Defendant contends that public interest in the exhibit is "minimal." (*Id.*, at 2.) She argues that the public's right to access such documents is limited when "offered solely in the context of a discovery dispute, not in a motion seeking to resolve the parties' substantive rights." (*Id.*, citing **Riker v. Fed. Bureau of Prisons**, 315 F. App'x 752, 755 (10th Cir. 2009) ("[W]here the documents 'play only a negligible role in the performance of Article III duties, the weight of presumption is low and amounts to little more than a prediction of public access.'" (citations omitted)).)

Plaintiff argues that the evidence contained in the emails "is highly probative to plaintiff's claims" and contains "discrepancies" with Defendant's deposition testimony and the report she gave to the Wichita police. (Doc. 159, at 4.) Plaintiff contends this makes the exhibit "important impeachment evidence." (*Id.*)

As to potential security concerns, Defendant argues that

> [c]ourts widely recognize the real and significant risk posed by disclosure of names and identifying information of individuals involved in ensuring abortion access. *See, e.g.*, **Judicial Watch**, 449 F.3d at 153 (D.C. Cir. 2006) (finding that privacy rights warranted the sealing of identifying information for individuals involved in the approval process for a drug used to terminate pregnancy); **Nat'l Abortion Fed'n v. Ctr. for Med. Progress**, No. 15 Civ. 3522, 2016 WL 454082, at *1–2 (N.D. Cal. Feb. 5, 2016) (recognizing that disclosure of the identity of

> individuals involved in reproductive health services creates a heightened risk of threats and harm); *Glenn v. Md. Dep't of Health & Mental Hygiene*, No. 48, Sept. Term 2015, 2016 WL 690513, at *4 (Md. Feb. 22, 2016) (affirming the state agency's redaction of identifying information in light of the 'history of violence' against providers of abortion services).

(Doc. 151, sealed, at 3.) Defendant continues that the exhibit at issue "reveal[s] that [Defendant] has consulted with employees of a non-profit organization focused on ensuring safe access to reproductive care for security and logistics advice." Defendant argues sealing the document is necessary for her to protect herself, her family and her employees because of "the threats from anti-abortion activists that [she] consistently faces . . . ." (*Id*., at 4.)

Plaintiff argues that "there has been absolutely no showing that (1) the information in the exhibit requires protection, or (2) the disclosure would result in any 'clearly defined and serious injury.' Instead, defendant makes conclusory allegations with general references to other cases decided under other facts and legal standards." (Doc. 159, at 2.) Plaintiff contends that Defendant "merely speculates about some vague harm that might happen as the result of the disclosure of emails that are five years old and involve persons whose connections to abortion are already well known through other public disclosure." (*Id*., at 2.) Plaintiff also points out that the emails "contain no personal identifying information or other private information. They contain no private addresses, private phone numbers,

11

social security number, or the like." (*Id.*, at 5.) Plaintiff also distinguishes the cases cited by Defendant, arguing that they "involved some pre-existing standard of confidentiality, such as a statute, regulation, or confidentiality agreement" and "required some specific evidentiary showing of an increased risk of violence or danger to the particular group of persons at issue." (*Id.*, at 7.)

The Court takes judicial notice of the fact that the potential harm to abortion providers in Wichita is more than speculative or "vague." That stated, the Court acknowledges Plaintiff's contention that the persons who sent/received the emails have "connections to abortion [that] are already well known through other public disclosure." (Doc. 159, at 2.)

The emails do, however, refer to other individuals, such as the person who appears to have called the police on the protesters, who are not "well known" to activists and who may be placed in danger if their identities can be ascertained from the emails. While this individual's name and address are not shared, it would not be difficult to determine who this individual is (or at least narrow the identity of the individual down to a very small pool of likely persons).

That potential danger to someone who is otherwise entirely unrelated to these proceedings, while not necessarily eminent, is sufficient to support sealing the exhibit for the purposes of this motion, particularly because the motion is procedural rather than substantive. Nothing in this ruling would affect the District

12

Court's ability to allow this exhibit to be unsealed should the exhibit be used to support a substantive motion (such as a motion for summary judgment) or used at trial to impeach Defendant or another witness. As such, Defendant's Motion for Leave to File Under Seal (Doc. 151) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash (Doc. 149) is **GRANTED**, Defendant's Motion to Seal (Doc. 151, sealed) is **GRANTED**, and Plaintiff's Motion to Strike (Doc. 177) is **DENIED as moot**.

IT IS SO ORDERED.

Dated this 18th day of April, 2018, at Wichita, Kansas.

s/ Kenneth G. Gale
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE