## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK HOLICK,                        )
                                    )
               Plaintiff,           )
                                    )
v.                                  )        Case No. 16-1188-JTM-KGG
                                    )
JULIE A. BURKHART,                  )
                                    )
               Defendant.           )
_____    )

### MEMORANDUM & ORDER DENYING MOTION TO AMEND

Now before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 152), in which he seeks to renew his previously abandoned defamation claim and include a new claim for civil conspiracy. Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED**.

### FACTUAL BACKGROUND

In 2013, Defendant received a temporary order of protection from stalking against Plaintiff in Kansas state court (state court action). Plaintiff, who is a resident of Oklahoma, filed the present matter in federal district court on June 9, 2016, alleging malicious prosecution and abuse of process against Defendant, a Kansas resident, relating to the allegations levied against him in the state court action. (*See generally*, Doc. 84.) The Court's initial Scheduling Order included a

deadline of May 12, 2017, to join parties or otherwise amend the pleadings. (Doc. 28, at 7.)

On July 31, 2017, Plaintiff filed a motion to amend his Complaint (Doc. 66), which, although untimely, was unopposed by Defendant. The amended pleading voluntarily dismissed Plaintiff's defamation claim. (Doc. 66-1.) Plaintiff indicated that the defamation claim was "dropped" as a "strategy choice, to avoid the time required by, and the burden of answering, the extensive discovery requests about his defamation damages." (Doc. 152, at 12.) The motion was granted (Doc. 77, text entry) and the Amended Complaint was filed on August 12, 2017. (Doc. 84.)

Defendant contends that Plaintiff employed this strategy "to deflect Defendant's efforts to obtain discovery into [Plaintiff's] alleged reputational harm." (Doc. 157, at 8.) Defendant notes that Plaintiff's first motion to amend (which dropped the defamation claim) was filed three hours after Defendant filed a motion to compel discovery on the issue. (*See* Docs. 65, 66.) Defendant points out that Plaintiff, in opposing that motion to compel, "told this Court that, 'Plaintiff has voluntarily dropped his defamation claim. This has rendered moot all requests for information related to plaintiff's reputation." (Doc. 95 at 2.)

The Scheduling Order was revised on August 31, 2017. (Doc. 102.) The new Order did not extend the expired deadline to amend the pleadings. (*Id*.) The

Summary of Deadlines and Settings in the Order did, however, note that this deadline had "passed."  (*Id.*, at 12.)

In late October 2017, Defense counsel began its third response to Plaintiff's Requests for Production, which had been served approximately three months earlier.  (Doc. 152, at 4.)  Plaintiff contends that this document production was "the first to be truly responsive to Plaintiff's first ten requests for production" and "provide the basis for the amended complaint which Plaintiff now seeks to file."  (*Id.*)  Plaintiff contends that documents received from Defendant in a document production on October 26, 2017, provided the information that lead him to renew his defamation claim and include a new claim for civil conspiracy.

Plaintiff motion includes an extensive factual summary detailing numerous events that occurred in Plaintiff's personal life during the time between receiving these discovery documents in October 2017 and bringing the present motion in February 2018.  (Doc. 152, at 4-5.)  For instance, "[o]n November 13, 2017 – about two weeks after receiving Defendant's Third Production of Documents – Plaintiff's counsel Donald McKinney learned that his father, Harold McKinney, age ninety-four, had been admitted to the hospital with a suspected case of pneumonia" and was not expected to survive.  (*Id.*, at 4.)  This resulted in the cancellation of Defendant's deposition, which had been scheduled for November 21, 2017.  (*Id.*)

Plaintiff's counsel "was required to move its office to a new location by December 1, 2017." (*Id.*, at 5.)  Harold McKinney passed away on December 15, 2017, with a funeral following on December 20.  (*Id.*)  This resulted in the continuation of a status conference with the Court as well as Plaintiff's deposition. (*Id.*)  Also, on January 9, 2018, the sister of Plaintiff's counsel "suffered a massive life-threatening stroke" and was placed in a medically induced coma.  (*Id.*)  As of the filing of the present motion, she remains unconscious.  (*Id.*)  The parties agreed to continue third-party depositions that had been scheduled for mid-January.  (*Id.*)

The parties held a status conference with this Court on January 5, 2018, during which the Court "observed that the case had essentially 'gone dark' for two months."  (Doc. 152, at 5.)  The discovery deadline, which was scheduled to expire on January 31, 2018, was extended to May 11, 2018.  (*Id.*)  Defendant states that, during this status conference with the Court, Plaintiff's counsel "raised for the first time the possibility of Plaintiff reasserting his defamation claim. He explained that, in the next ten days, he planned to file a motion to amend the complaint.  Almost one month later, on February 2, 2018, he filed his second motion to amend the complaint."  (Doc. 157, at 8-9.)  The Court notes that the motion was filed 10 weeks after Plaintiff received the document production that he contends inspired him to file the present motion – not to mention eight and a half months after the deadline to move to amend had expired.

Another revised Scheduling Order was entered on January 18, 2018.  (Doc. 147.)  As of the filing of the present motion, only one deposition had occurred – Plaintiff's attorneys' fees expert.  (Doc. 152, at 5.)

## ANALYSIS

Pursuant to Fed.R.Civ.P. 15, Plaintiff moves to amend his Complaint for a second time.  According to Plaintiff, the proposed pleading "maintains the counts and allegations against the same defendant as the original complaint, and adds no new parties, but accounts for significant factual and procedural developments that have occurred since both the original complaint and the First Amended Complaint were filed."  (Doc. 152, at 1.)

Defendant responds that the motion, filed eight months past the deadline, "is Plaintiff's latest attempt to manipulate the course of discovery and unnecessarily prolong this litigation."  (Doc. 157, at 6.)  Defendant argues that "Plaintiff's gamesmanship should be rejected."  (*Id*.)

**A.    Standards for a Rule 15 Motion to Amend.**

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . ."  Fed.R. Civ.P. 15(a). The granting of an amendment is within the sound discretion of the court.  *See First City Bank, N.A., v. Air Capitol Aircraft Sales, Inc*., 820 F.2d

1127, 1132 (10th Cir. 1987).  The United States Supreme Court has, however, indicated that the provision "leave shall be freely given" is a "mandate . . . to be heeded."  ***Foman v. Davis***, 371 U.S. 178, 182 (1962).  "In determining whether to grant leave to amend, this Court may consider such factors as undue delay, the moving party's bad faith or dilatory motive, the prejudice an amendment may cause the opposing party, and the futility of amendment."  *Id*., at 182; *see also* ***Jarrett v. Sprint/United Mgmt. Co.***, No. 97–2487–EEO, 1998 WL 560008, at *1 (D. Kan. 1998).

Plaintiff contends that "[n]one of the factors that militate against granting a motion to amend are present in this case."  (Doc. 152, at 16.)  He argues that the proposed amendment causes no undue prejudice to Defendant because the amendments do not change the theory of the case and discovery is ongoing.  (Doc. 152, at 9.)  Plaintiff contends that there was no undue delay and Defendant "cannot be prejudiced . . . by the newly alleged facts . . . [because she] and her associates have first-hand knowledge of the roles that they played in the events at issue.)  (*Id*.) Further, Plaintiff argues that there is additional time for discovery and depositions the parties and "meaningful witnesses" were yet to occur when this motion was filed.  (*Id*.)  Plaintiff also contends that "the amendments facilitate the resolution of this matter on the merits" and the request to amend is not futile because he has "alleged sufficient facts to state a claim for relief that is facially plausible."  (*Id*., at

17.)  As discussed below, Defendant argues that Plaintiff cannot meet the requirements of Fed.R.Civ.P. 15 because the proposed amendments are futile and result from bad faith.  (*See generally* Doc. 157, at 18-28.)

Before the Court can engage in a Rule 15 analysis, however, it must analyze Plaintiff's requested amendment in the context of Fed.R.Civ.P. 16 because the deadline to amend pleadings expired in the original Scheduling Order (and was not reset in the Amended Scheduling Order).  (Doc. 152, at 8; Doc. 28.)  Plaintiff must therefore first move the Court for an amendment to the Scheduling Order pursuant to Fed.R.Civ.P. 16.  Plaintiff argues that a failure to amend the Scheduling Order, resulting in "[s]trict enforcement of that initial deadline would not serve the interests of justice or the purpose and spirit of Rule 15(a)."  (Doc. 152, at 8.)

## B.    Application of Rule 16.

Pursuant to Fed.R.Civ.P. 16, "[a] schedule may be modified only for good cause and with the judge's consent."  If the Court determines that good cause has been established, the Court then proceeds to determine if the Rule 15(a) standard has also been met.

> The advisory committee notes to this Rule provide:
> '[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.'
> Fed.R.Civ.P. 16 advisory committee's note to 1983 amendment; *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) ('In practice, this standard requires the movant to show

the scheduling deadlines cannot be met despite [the movant's] diligent efforts.' (citation and internal quotation marks omitted)).  'Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed.'  *Gorsuch*, 771 F.3d at 1240.

The district court exercises its sound discretion when deciding whether to modify a Scheduling Order.  *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (reviewing a district court's refusal to enter a new scheduling order for abuse of discretion).  Despite this 'broad discretion in managing the pretrial schedule,' the Tenth Circuit has concluded that 'total inflexibility is undesirable.' *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). Also, a scheduling order which produces an exclusion of material evidence is 'a drastic sanction.'  *Id.*; *see also Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ('While a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, rigid adherence to the . . . scheduling order is not advisable.' (citations and internal quotation marks omitted)).

*Little v. Budd Co.*, NO. 16-4170-DDC-KGG, 2018 WL 836292, at *3 (D. Kan. Feb. 13, 2018).

### 1.    Good cause.

Plaintiff argues good cause exists for the amendment because of the discovery of "new information" that "may be reasonably inferred from documents included in Defendant's Third Production, produced near the end of October." (Doc. 152, at 9.)  These allegedly newly discovered facts include:

- by the time of the first event cited in Defendant's anti-stalking petition, Defendant "had already developed malice and strong animus against" Plaintiff and had "erroneously determined [he] was the leader of a 'hate group' because of her "knowledge of his involvement in other protest activities";
- prior to the events contained in the anti-stalking petition, Defendant attempted to "smear and defame [Plaintiff] by directing persons on her staff to write fake letters" and a press release – and make efforts to have them published – linking Plaintiff and his associates with the death of Dr. George Tiller;
- prior to filing the anti-stalking petition, Defendant "engaged in a conspiracy with her associate(s) and/or attorney(s) to file the false charges" against Defendant in the anti-stalking petition and thereafter "engaged in efforts to wrongfully continue the temporary order against Holick, and to get him arrested," including communications with the Wichita police.

(Doc. 152-1, at 6-7.)

Defendant responds that Plaintiff's argument is "disingenuous" because Plaintiff "knew of the underlying conduct on which he bases his second amended complaint far in advance of Defendant's October 2017 production." (Doc. 157, at 11.) The Court will address this issue in the context of the specific newly-alleged claims, discussed *infra*.

Defendant continues that "[e]ven if Plaintiff first learned of the conduct he now alleges was improper" as a result of the October 2017 document production, Plaintiff still "cannot establish good cause for the 100-day delay between

Defendant's October 26, 2017[,] document production and his February 2, 2018[,]

motion to amend." (*Id*.)

> Defendant recognizes that one of Plaintiff's two
> attorneys, Mr. McKinney, experienced a significant
> personal loss when his father passed away in December
> 2017 and has confronted additional personal challenges
> with his sister's illness in January 2018. But, to the
> extent Plaintiff now asserts that these events explain the
> delay in this motion since October, on the basis that they
> caused a 'blackout' in the case, he is incorrect.

 (Doc. 157, at 11.) For instance, Defendant indicates that Plaintiff's counsel

attended a deposition in December, asked to schedule three others that month, and

"corresponded about deposition scheduling and Defendant's third production of

documents." (*Id*.; Doc. 157-2.)

Defendant argues that the active involvement of Plaintiff's counsel during

this time "belies" Plaintiff's argument of "good cause" for the delay in moving to

amend. (Doc. 157, at 11-12.) Further, Defendant points to the fact that Plaintiff

has two attorneys, thus his other attorney should have been able to have filed the

motion in a timely manner. (*Id*., at 12.)

While sympathetic to the hardships experienced by Plaintiff's counsel, the

Court is unpersuaded that the events that complicated his personal life during the

more than three months between the October 2017 document production and the

filing of the present motion in February 2018 significantly inhibited his ability to

address these issues in a more timely manner. Mr. McKinney was able to litigate

other aspects of this case. For instance, if there was time for Plaintiff's counsel to attend a deposition in December (and attempt to schedule three additional depositions that month), there was time to address the issues contained in the present motion. (Doc. 157, at 11.) Further, Mr. McKinney is not the only attorney representing Plaintiff in this action. The Court finds this information to be irrelevant. The Court thus turns to an analysis of the facts supporting the new claims for punitive damages, defamation, and civil conspiracy.

### 2. Punitive damages.

Plaintiff states that "[a]t the time of the filing of the original complaint, [he] had none of [the] information" relating to Defendant's malice and animus towards him, summarized and enumerated above. (Doc. 152, at 10.) Plaintiff continues that "[t]he gravamen of [his] original complaint was primarily simple negligence, that he was 'singled out' by [Defendant] in a case of mistaken identify [sic], without a reasonable effort on her part to adequately inquire and learn the level of his involvement and the identity of the leaders of the protest event at her house." (Doc. 152, at 10.)

According to Plaintiff, however, the information gleaned from discovery "provides a basis to allege that, even before the occurrence of the events that were the subject of her fake petition, [Defendant] had developed an animus and strong malice toward [Plaintiff]." (*Id*., at 11.) Plaintiff is now of the opinion that "[w]ith

the assistance of others, [Defendant] intentionally targeted him with a campaign of

negative publicity and, ultimately, the false stalking charges which she personally

alleged in a verified petition and continued for two years." (*Id.*)  This, according to

Plaintiff, constitutes "much stronger evidence to support a punitive damages claim

than [he] had before Defendant's" third document production, "both in quantity

and in quality." (*Id.*)  Plaintiff argues that

> [t]he new evidence and documents significantly increase
> the probability that Defendant intentionally acted with
> the requisite intent and malice to support a claim for
> punitive damages.  This is particularly true in the face of
> the defense that Burkhart merely acted 'with reasonable
> fear for her own safety.'  The new evidence also
> undermines the notion the [sic] [Defendant's] conduct
> against [Plaintiff] was merely some type of a mistake.

(*Id.*)

Defendant disputes Plaintiff's assertion that the allegedly "stronger

evidence" is sufficient to establish "good cause" to reinstate a punitive damages

claim. (Doc. 157, at 15.)  Defendant responds that Plaintiff's initial Complaint,

filed in June 2016, alleged that Defendant was "reckless and intentional in filing

the false stalking charges," "acted with malice in 'singling out'" Plaintiff,

"malicious[ly] continu[ed]" the temporary order, and made communications "with

knowledge that they were false and with a reckless disregard for the truth, and []

with evil-mindedness or a specific intent to injure the reputation and credibility" of

Plaintiff. (*Id.*; *see also generally* Doc. 1.)  Defendant opines that while

"[d]eveloping stronger evidence during discovery is to be expected," Plaintiff's

new factual allegations do not constitute the "new information" necessary to

constitute "good cause," particularly when Plaintiff previously voluntarily

withdrew the claim.  (*Id.*)

The Court agrees.  Plaintiff's initial Complaint, filed in June 2016, is replete

with allegations similar to the "new" factual allegations contained in the proposed

amended Pleading.  For instance, the initial Complaint alleges that Defendant

"acted with malice in 'singling out' [Plaintiff], on her unfounded suspicion that he

was 'the leader' of the protest activity, and in the initiation and continuance of the

anti-stalking order based on falsehoods, hearsay, and inadequate evidence."  (Doc.

1, at 6.)  Also included is the allegation that Defendant made communications

"with knowledge that they were false and with a reckless disregard for the truth,

and were made with evil-mindedness or a specific intent to injure the reputation

and credibility of" Plaintiff.  (*Id.*, at 8.)

Plaintiff's newly stated allegations may be more specific than those

contained in the original Complaint.  They do not, however, constitute new

evidence.  The "vast majority" of the facts alleged in the proposed Second

Amended Complaint are "based on information in plaintiff's possession that

appears could have been plead from the outset."  ***Ericson v. Landers McLarty

Olathe KS, LLC***, No. 17-2087-DDC-KGS, 2017 WL 4573309, at *3 (D. Kan. Oct.

13, 2017).  Plaintiff's Motion to Amend is **DENIED** as to the punitive damages

claim.

### 3.    Defamation.

Plaintiff previously voluntarily dismissed his defamation claim.  (Docs. 66,

84.)  He contends he did so "as a strategy choice, to avoid the time required by,

and the burden of answering, the extensive discovery requests about his

defamation damages."  (Doc. 152, at 12.)  Plaintiff continues that "[u]nder the facts

at that time," his counsel determined that the related claimed damages (primarily

regarding alleged damages to his employment) "could be sacrificed for

the sake of efficiency, to streamline the process of answering the discovery."  (*Id*.,

at 12-13.)  He argues that the information he gleaned from Defendant's third

discovery responses give him a clearer picture of Defendant's "efforts to smear and

defame Plaintiff with false accusations and fake letters" as well as the "extent of

Defendant's malice and animus against him . . . ."  (*Id*., at 13.)  Plaintiff argues that

"[t]his new information casts the defamation claim in a new light and adds value to

it."  (*Id*.)

Plaintiff contends that "Defendant is not prejudiced by the reinstatement of

the defamation claim" because the claim was in his original Complaint, Plaintiff

has not yet been deposed, and Plaintiff was ordered by the Court to respond to

Defendant's discovery requests concerning the damages which Holick claimed

resulted from defamation caused by the false accusation of stalking in March, 2013.  (*Id*., at 12, 13.)  "Because Plaintiff is required to respond to the employment discovery requests anyway, in all fairness he should be permitted to re-assert, in the amended petition, the underlying defamation claim that originally served as a basis for the damages," particularly given the new discovery deadline in the case. (*Id*., at 13-14.)

Defendant argues that Plaintiff previously stated a defamation claim that survived a Motion to Dismiss.  (Doc. 157, at 13; Doc. 19.)  Thus, from the outset of this case, Plaintiff was aware of sufficient facts to properly plead the claim. (*Id*.)  Defendant continues that "[i]t is irrelevant that discovery revealed *additional* evidence that Plaintiff believes 'adds value' to his initial claim for defamation." (Doc. 157, at 13 (emphasis in original).)  As Defendant clarifies, "Plaintiff did not discover a *new* defamation claim in the course of discovery; he simply learned additional information that allegedly further supports the defamation claim that he previously pleaded."  (*Id*. (emphasis in original).)

The Court agrees.  Plaintiff not only had sufficient information available to allege a claim for defamation when the case was initially filed in June 2016, he actually alleged the claim.  Plaintiff's attempt to reinstate the defamation claim -- some eight months after the deadline to move to amend the pleadings and after voluntarily dismissing the claim months ago – is mere gamesmanship that the

Court will not allow.  Even assuming for the sake of argument that the necessary

information was unknown until the October 2017 document production, there is no

adequate explanation as to why Plaintiff waited more than three months after that

production before filing the present Motion to Amend.  Plaintiff's Motion to

Amend is **DENIED** as to the defamation claim.

### 4.    Civil conspiracy.

Plaintiff also contends that this newly gleaned information "provides a basis

to reasonably infer and believe that Defendant engaged in a civil conspiracy

against [Plaintiff] which caused him personal damages as well as a fraud on the

state court."  (Doc. 152, at 14.)  According to Plaintiff, Defendant

> and one or more of her associates and/or attorneys
> planned and discussed the filing of a false legal document
> accusing [Plaintiff] of stalking her.  They discussed
> accusations that could be brought against [Plaintiff] –
> including some that Defendant has previously blamed on
> others – in order to support the false [state court] petition.
> They agreed, and had a meeting of the minds, on the
> course of action and the object to be accomplished, that
> is, the filing of false stalking accusations against
> [Plaintiff].

(*Id*.)  Plaintiff argues that "[t]his new information provides sufficient evidentiary

basis, and good cause, to allow an amended claim for civil conspiracy under

Kansas law."  (*Id*., at 15.)

Defendant responds that this information is anything but new to Plaintiff.

According to Defendant, she admitted to Plaintiff's counsel during her deposition

in the underlying state action in April 2014 that "she consulted with an attorney before filling out the [state court] petition." (Doc. 157, at 16.) Plaintiff concedes that this was party of Defendant's deposition testimony. (Doc. 167, at 16.)

Defendant also contends that at the time of her initial disclosures in March 2017, Plaintiff was aware that, "in the lead-up to reopening the clinic," Defendant discussed Plaintiff's "role in actions aimed at ensuring the clinic would not reopen" with her "associates." (Doc. 157, at 17.) Plaintiff's reply brief concedes that he received this email in the initial disclosures. (Doc. 167, at 28.) Defendant points to an e-mail chain provided in the disclosures in which Defendant and employees of the non-profit communicate "regarding the protection from stalking order, in which [Defendant] explained why she was fearful and the non-profit employee indicated that she had spoken with Ms. Thompson regarding the possibility of pursuing a protection from stalking order." (Doc. 157, at 17.)

As such, Defendant argues that Plaintiff is confusing "*additional* supporting information with *new* information." (*Id*. (emphasis in original).) Defendant argues that Plaintiff has failed to establish the requisite "good cause" to bring a claim for civil conspiracy "given that he 'knew of underlying conduct but simply failed to raise a claim initially.'" ***Anjela Greer v. City of Wichita***, No. 16-1185-EFM-JPO, 2017 WL 1492937, at *3 (D. Kan. April 26, 2017).

The Court agrees.  As with the above claims, the Court finds that Plaintiff has failed to establish the requisite good cause.  His Motion to Amend to add a claim for civil conspiracy fails on the Rule 16 analysis.

## C.    Rule 15 analysis.

The Court need not address the Rule 15 analysis because Plaintiff has failed to establish good cause to amend the Scheduling Order to allow her to move to amend out of time.  Even so, the Court will substantively analyze Plaintiff's request under Rule 15.

As stated above, "[i]n determining whether to grant leave to amend, this Court may consider such factors as undue delay, the moving party's bad faith or dilatory motive, the prejudice an amendment may cause the opposing party, and the futility of amendment."  *Foman v. Davis*, 371 U.S. at 182; *see also* ***Wilkerson v. Shinseki***, 606 F.3d 1256, 1267 (10th Cir. 2010).  Defendant argues that even if Plaintiff meets the "good cause" standard of Rule 16, Plaintiff cannot meet the requirements of Fed.R.Civ.P. 15 because the proposed amendments are futile, result from bad faith, and were unduly delayed.  (*See generally* Doc. 157, at 18-28.)

### 1.    Futility.

A proposed amendment that is subject to dismissal, such as for failure to state a claim for relief or being barred by the statute of limitations, is considered

futile.  *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).  Defendant

argues that Plaintiff's motion must be denied because the proposed claims are

futile.  (*See generally* Doc. 157, at 18-25.)  Defendant contends Plaintiff's

defamation is barred by the one-year statute of limitations and that Plaintiff cannot

establish that he was damaged by the alleged communications.  (*Id*., at 19-20.)

As for the civil conspiracy claim, Defendant argues that the proposed

amendment "offers only conclusory statements as to the elements of fraud," which

is insufficient to meet "the specificity in pleading requirements."  (*Id*., at 21.)

Defendant contends that this claim is also barred by the statute of limitations.  (*Id*.,

at 24.)

Given the Court's reliance on the issue of undue delay, discussed *infra*, the

Court need not determine whether the proposed claims are futile and/or barred by

the applicable statute of limitations issue.  The Court finds these arguments moot.

### 2.     Bad faith.

Defendant relies on the case of *Koch v. Koch Inds.*, for the proposition that

"[a]n amendment adding causes of action will be denied if sought in bad faith."

127 F.R.D. 206, 211 (D. Kan. 1989).  Defendant states that "[a] finding of bad

faith is warranted where, as here, 'awareness of facts and failure to include them in

the complaint might give rise to the inference that the plaintiff was engaging in

tactical maneuvers to force the court to consider various theories seriatim.'" (Doc. 157, at 25 (quoting *id*.).)

Defendant refers the Court to Plaintiff's admission that he is attempting to "reassert to claims that he voluntarily dismissed as a 'strategy choice'" some six months before filing the present motion. (*Id*.) Defendant argues that

> [n]ow, for the first time, Plaintiff admits that his real intent was to 'avoid the time required by, and the burden of answering, the extensive discovery requests' about defamation. ECF No. 152 at 12. Less than one month before the then-effective discovery deadline of January 31, Plaintiff told the Court and Defendant that he intended to reassert his defamation claim. Urged by this Court, the parties subsequently agreed to yet another extension of the discovery deadline – this time for three months. Still, the Plaintiff waited almost a month to actually file this motion; by the time the motion is fully briefed and this Court issues its order, the long-extended discovery deadline will be looming yet again. Plaintiff's 'strategy choice' is transparent: he is dropping and adding claims seriatim to game the discovery process and delay the conclusion of this litigation – the very definition of bad faith.

(*Id*., at 25-26.) Defendant contends that Plaintiff's decision to wait to file the civil conspiracy claim is strategic, also.

> Plaintiff's supplemental Rule 26 disclosures, served on April 9, 2017, identified Ms. Thompson as a witness with 'discoverable information about [Defendant's] initiation of the anti-stalking case against [Plaintiff].' To credibly believe at the time that [Defendant's] attorney would possess nonprivileged evidence, Plaintiff must have foreseen an exception to the attorney-client and work product privileges. That he has now suddenly

> determined that Defendant and her attorneys conspired to
> commit fraud cannot be coincidental; it is the definition
> of pleading seriatim.

(*Id.*, at 26-27.)

Plaintiff replies that the proposed amendment was not made in bad faith because of the discovery of the new information in the October 2017 document production.  (Doc. 167, at 2.)  Plaintiff quotes the ***Deghand*** opinion for the proposition that "'[l]iberality in amendment is important to assure a party a fair opportunity to present his claims and defenses.'"  (*Id.* (quoting ***Deghand***, 904 F.Supp. at 1221).)  Plaintiff further reminds the Court that the Federal Rules "'are designed to encourage decisions on the merits rather than on mere technicalities.'" (*Id.* (quoting ***Deghand***, 904 F.Supp. at 1221).)  The ***Deghand*** decision, however, unequivocally states that refusal to amend is "justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." 904 F.Supp. at 1221.  As discussed in the subsequent section of this Order, the Court finds that, in this instance, the lines between bad faith, undue delay, and undue prejudice to the opposing party are indelibly intertwined.

### 3.    Undue delay.

Finally, Defendant argues that the motion to amend should be denied as unduly delayed.  The various life events experienced by Plaintiff's counsel are

summarized above.  Defendant contends that these events do not excuse the delay

in bringing the present motion some eight months after expiration of the deadline

to amend.

> Defendant's latest production was served more than three
> months before Plaintiff moved to amend. And, as
> described *supra*, Plaintiff has known or should have
> known about the underlying facts he now asserts as the
> basis for a third complaint since at least Defendant's
> initial disclosures in April 2017, and in some instances as
> long ago as 2014.  Plaintiff's decision to wait until
> February 2018 to move to amend is inexcusable, and his
> undue delay provides ample reason to deny the motion.

(Doc. 157, at 28.)

The Court will assume, *arguendo*, that Plaintiff could establish that the new

claims included in the proposed amended pleading are not futile.  Even so, the

Court finds that the motion for leave to amend must fail based on undue delay.

Plaintiff correctly states that "[i]n determining whether a delay was undue, the

Tenth Circuit focuses primarily on the reasons for the delay."  (Doc. 167, at 27

(citing **Boone v. TFI Family Services, Inc**., No. 14-2548-JTM, 2016 WL

3192996, *1 (D. Kan. June 6, 2016) (internal citation omitted).)

> 'Lateness does not of itself justify the denial of [an]
> amendment,' but the 'longer the delay, 'the more likely
> the motion to amend will be denied, as protracted delay,
> with its attendant burdens on the opponent and the court,
> is itself a sufficient reason for the court to withhold
> permission to amend.' '  *Id*. (quoting **Steir v. Girl Scouts
> of the USA**, 383 F.3d 7, 12 (1st Cir. 2004)).

*Id*. (quoting ***Minter v. Prime Equip. Co.***, 451 F.3d 1196, 1205 (10th Cir. 2006).)

As discussed above, Plaintiff had sufficient information to bring these claims when his Complaint was initially filed.  Even assuming Plaintiff did not have sufficient information until Defendant's document production in October 2017, Plaintiff has failed to adequately explain the 100-day delay in filing the present motion in January 2018.  (*See* Doc. 167, at 27 (relying on "the death and near death of family members of Plaintiff's counsel, as well as the intervening holidays of Thanksgiving, Christmas, and New Years [sic]. . .").)  Plaintiff's request to amend his Complaint a second time was unduly delayed and fails under Rule 15 analysis. Plaintiff's motion (Doc. 152) is, therefore, **DENIED**.


**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 152) is **DENIED**.

IT IS SO ORDERED.

Dated this 30th day of April, 2018, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE
