IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK HOLICK

    Plaintiff,

v.                                           Case No. 16-1188-JWB-KGG

JULIE A. BURKHART,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on the following:

1. Plaintiff's Objection to Order of Magistrate Judge (Doc. 203); Defendant's Response (Doc. 218); and Plaintiff's Reply (Doc. 221, 222);

2. Plaintiff's Objection to Order of Magistrate Judge (Doc. 215); Defendant's Response (Doc. 220). and Plaintiff's Reply (Doc. 228);

3. Defendant's Motion to Disregard Plaintiff's Reply in Support of Objections (Doc. 226); Plaintiff's Response (Doc. 233); and Defendant's Reply (Doc. 237);

4. Plaintiff's Motion for Leave to File Reply Brief (Doc. 227); and Defendant's Response (Doc. 231); and

5. Defendant's Motion to Maintain Seal (Doc. 234); and Plaintiff's Response (Doc. 238).

For the reasons set for herein, Plaintiff's objections to the magistrate judge's rulings and his motion for leave to file a reply brief are DENIED. Defendant's motion to disregard Plaintiff's reply brief and motion to maintain the sealing of certain exhibits are GRANTED.

**Background.**

Plaintiff is an ordained minister who resides in Oklahoma. Defendant operates an abortion facility in Wichita. (Doc. 84 at 1.) The first Amended Complaint, which invokes the court's diversity jurisdiction under 28 U.S.C. § 1332(a), alleges that Defendant filed a protection-from-

stalking (PFS) petition against Plaintiff in Sedgwick County District Court on March 7, 2013. (*Id.*) Plaintiff claims Defendant made numerous false accusations in the petition, including falsely accusing him of stalking Defendant by picketing in front of her house and handing out a "wanted-style" flyer on November 17, 2012. Plaintiff claims the petition also falsely alleged that on February 13, 2013, he stalked Defendant, pointed a sign at her house reading, "Where is your church?"[1], and used "a bull horn or way to magnify volume" during a protest in front of her house. (*Id.* at 1-2.) Plaintiff alleges he was not in front of Defendant's house on either occasion (he alleges he was about ten houses away), that the allegations were false, and that Defendant did not make reasonable efforts to verify the allegations. (*Id.*) The Sedgwick County District Court issued an ex parte PFS order against Plaintiff based on Defendant's petition. Plaintiff alleges the order remained in effect for two years until Defendant voluntarily dismissed the case after Plaintiff filed a summary judgment motion. (*Id.* at 6.)

The Amended Complaint alleges claims for malicious prosecution and abuse of process. It alleges that Defendant initiated the PFS petition without probable cause, that she acted with malice, that the prior action was terminated in Plaintiff's favor, and that Plaintiff was damaged as a result. (*Id.*) It further alleges Defendant acted in an improper manner in the prosecution of a regular proceeding, that she did so with the ulterior motive of harassing and causing hardship to Plaintiff because she believed he was a leader of pro-life protest activity, and that Plaintiff was damaged as a result. (*Id.* at 7.)

---

[1] Defendant contends this was a veiled threat alluding to the murder of her former employer, Dr. George Tiller, who was shot and killed by an abortion opponent while attending church. Plaintiff contends this sign has been used "for over a decade" by pro-life advocates "to raise awareness" among Christians concerning tolerance of abortion by some churches. (Doc. 84 at 3.)

**Plaintiff's Objection to Order of Magistrate Judge (Doc. 203)**. Plaintiff objects to the magistrate judge's order of April 18, 2018, (Doc. 190) insofar as it quashed Plaintiff's attempt to depose attorneys Robert Eye and Erin Thompson. Thompson (and perhaps Eye) provided legal advice to Defendant prior to the filing of her PFS petition. They also represented her at some point during the state action and they represent Defendant in this action. The magistrate judge quashed the depositions because some of the information sought was protected by attorney-client privilege and, as to non-privileged information, he found Plaintiff had not shown that the attorneys were the only source for obtaining the information. (Doc. 190 at 5, 9.)

Plaintiff argues the magistrate judge's ruling "is clearly erroneous on the facts and is contrary to established law, and improperly relied on new arguments and legal authority raised for the first time in a reply brief…." (Doc. 203 at 1.) Plaintiff contends:

> There is evidence that the content of the stalking charges was shaped and directly influenced by [Plaintiff's] conversations with the attorneys as well as by emails and other communications which included the attorneys and representatives of the Feminist Majority Foundation (FMF) in Beverly Hills, California. The FMF had participated in previous efforts to bring false stalking charges against other pro-life activists nationwide and promoted that tactic. The information which plaintiff now seeks is highly relevant and likely to lead to the discovery of admissible evidence, as it tends to show that the filing of a false PFS petition singling out Pastor Holick was a political tactic of harassment and targeting, rather than a good faith effort to protect the safety of defendant.

(Doc. 203 at 2.)

Plaintiff argues the use of a false PFS petition was a tortious act in which the attorneys played a direct role and that Kansas law does not apply the attorney-client privilege "when the communications at issue enable or aid the commission or planning of a tort." (Doc. 203 at 1) (citing K.S.A. § 60-426(b)). With respect to non-privileged information, Plaintiff argues that deposing Defendant proved inadequate to obtain relevant information about the PFS petition, and that it would be prohibitively expensive for Plaintiff to seek information from others who might have it.

3

(*Id.* at 12-13.) Plaintiff also argues the magistrate judge improperly relied on arguments and authorities first set forth by Defendant in a reply brief (*Id.* at 15-16.)

Under Fed. R. Civ. P. 72(a), the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The clearly erroneous standard requires this court to affirm any factual determination by the magistrate judge unless, on the entire evidence, it is left with the definite and firm conviction that a mistake has been made. *Hale v. Emporia State Univ.*, No. 16-4182-DDC, 2018 WL 1609552, *1 (D. Kan. Apr. 3, 2018) (citation omitted). A magistrate judge's order is "contrary to law" if it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Id.*

Judge Rushfelt thoroughly discussed the standards governing attempts to depose opposing counsel in *Ed Tobergte Associates, Co. v. Russell Brands, LLC,* 259 F.R.D. 550 (D. Kan. 2009). As he noted, courts in this district have almost universally applied "the *Shelton* criteria" from *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *See Russell Brands*, 259 F.R.D. at 554-55 (citing cases). The Tenth Circuit has likewise endorsed the test. *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001). *Shelton* held that depositions should only be allowed where the party seeking the deposition shows that: (1) no means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.3d at 1327. The Tenth Circuit has indicated the district court has discretion to disallow such a deposition when any of the *Shelton* factors are not satisfied. *Thiessen*, 267 F.3d at 1112 (finding no abuse of discretion in disallowing deposition); *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) ("ordinarily the trial court at least has the *discretion* under Rule 26(c) to issue a

protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria … are not met.").

The court first rejects Plaintiff's argument that the magistrate judge erred by considering the *Shelton* factors. The fact that Defendant failed to cite *Shelton* in the motion to quash did not preclude the magistrate judge from applying it. The *Shelton* test represents the governing law in the Tenth Circuit; it likely would have been error not to apply it. Nor does the court agree that Defendant improperly injected arguments about *Shelton* in her reply brief or that Plaintiff did not have a fair opportunity to address the relevant factors. Given the long-standing use of the *Shelton* test in this district, both sides should have been aware that a request to depose opposing counsel would be examined under those standards. *See Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (applying *Shelton* factors); *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994) (citing *Shelton* and other cases applying same test). Defendant's invocation of the test in her reply was a fair response to Plaintiff's argument that the depositions should be allowed because some of the information sought was not privileged.

Plaintiff fails to make the showing required by *Shelton*. The first factor requires Plaintiff to show there are no other means to obtain the information he seeks. Insofar as Plaintiff is seeking email communications, he makes no showing he cannot obtain the emails from Defendant or from other recipients. Insofar as Plaintiff is seeking to discover what input the FMF had in contributing to the contents or the filing of Defendant's PFS petition, he fails to show he could not obtain the relevant information from FMF members duVergne Gaines or Susan Gilligan, who allegedly communicated with Defendant prior to the filing of her petition. Similarly, although Plaintiff cites evidence that Erin Thompson may have communicated with duVerge Gaines about "obtaining a PFS for [Defendant]," he fails to show why the substance of those communications cannot be

5

obtained from Gaines. Finally, insofar as Plaintiff is seeking information about what Defendant conveyed to Eye or Thompson, Plaintiff has failed to show he could not obtain that information from Defendant. Plaintiff suggests that Defendant thwarted attempts to discover that information by engaging in "obfuscations" or "selective memory" during depositions, but he cites no specific testimony to support such a conclusion. Contrary to Plaintiff's suggestion, the deposition testimony does not indicate that Defendant attempted to hide her communication with Thompson. The deposition attachments show Defendant readily acknowledged having spoken with Thompson, while asserting that filing of the PFS petition was her (Defendant's) own idea. (Doc. 204-3 at 20, 23.)[2] Plaintiff fails to show he was unable to pursue any relevant information about these matters by deposing Defendant.

Plaintiff argues the *Shelton* criteria do not apply when an attorney was "directly involved in events preceding the filing of the action which may be relevant to the issues in dispute." (Doc. 203 at 3) (citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995)). *United Phosphorus* is not instructive, however, as the attorney in that case agreed to be deposed, so "the issue in [*United Phosphorus*] is not whether opposing counsel's deposition will be taken." *Id.*, 164 F.R.D. at 247. Plaintiff similarly argues depositions are allowed when the attorney is a fact witness who has the best knowledge concerning his or her own involvement. (Doc. 203 at 14) (citing *inter alia Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687 (D. Kan. 1990)). That principle has been applied when an attorney is uniquely in possession of factual information upon which the claims are based, thus rendering the attorney a critical

---

[2] When first asked whether she consulted with anyone before filling out the petition, Defendant answered no. (Doc. 204-3 at 19.) Plaintiff's counsel then clarified by asking if she had consulted an attorney about it, to which Defendant responded, "I had discussed this, but I went down and filled it out on my own and no one – I mean, these are my words. So we discussed it, but I did not have an attorney present with me when I filled this out, if that's what you mean." (*Id*. at 20.) Defendant identified the attorney as Erin Thompson. (*Id.*)

6

witness. In *Hay & Forage,* the attorney was "the best and perhaps the only available source" for information about photographs taken by the attorney and about the attorney's own meetings with a patent examiner. *Id.*, 132 F.R.D. at 690. In *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, * 1 (D. Kan. June 24, 2015), the attorney was compelled to testify about a business operated by an LLC of which the attorney was a member. In *Kannaday v. Ball*, No. 09-2255-JWL, Judge O'Hara allowed an attorney deposition after prior attempts to get the information through written discovery were unsuccessful, after the attorney himself had previously deposed another attorney about the same subject in the case, and where it was "likely the only way [the party] will get the information it seeks." *Id*., slip op. at 2-4 (Dec. 3, 2009).

The present case is hardly similar. The allegedly false allegations on which Defendant's PFS petition was based concerned protests at Defendant's residence. Attorneys Thompson and Eye were not witnesses to those events and have no personal knowledge of them. Merely because the attorneys discussed the filing of a PFS petition with Defendant at some point and subsequently represented her after she filed a petition does not make them fact witnesses to the underlying events. *Cf. Fish v. Kobach*, 320 F.R.D. 566, 578 (D. Kan. 2017) (deposition allowed where defendant attorney drafted the documents at issue and "is the only person with direct knowledge to answer certain questions about the documents," and "the information plaintiffs seek about the documents relates to Secretary Kobach's actions as a *party* to this case, not to his role as an *attorney* of record"). *Hay & Forage* and the "fact witness" line of cases thus do not support Plaintiff's arguments. Finally, Plaintiff cites *Kansas Food Packers v. Corpak*, 2000 WL 33170870 (D. Kan. Oct. 12, 2000), but that case is likewise inapplicable, as it dealt with a waiver of the attorney-client privilege due to an "advice of counsel" affirmative defense. *Id.*, 2000 WL 33170870, *3 (because defendant asserts that it brought a claim "'in good faith on the advice of

counsel,' [defendant] has waived the privilege."). Plaintiff has not alleged or shown that Defendant is asserting an advice-of-counsel defense.

As Judge Rushfelt pointed out in *Hay & Forage*, the party seeking a deposition of opposing counsel "should demonstrate that the deposition is the only reasonably practical means available for obtaining the information. If there are other available sources, he should explore them first." *Id.*, 132 F.R.D. at 689. This is so because "experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Id.* (citation omitted).[3] That has proved true here, at least insofar as unnecessary delay is concerned. Plaintiff has failed to satisfy the first *Shelton* factor, and the court is satisfied that Judge Gale did not err in granting the motion to quash the depositions of Thompson and Eye. In view of this finding, the court need not address Plaintiff's remaining arguments about the scope of attorney-client privilege.

The court's ruling is without prejudice to Plaintiff reasserting a request to depose Eye and Thompson in the future. Because the court's ruling is based solely on the first *Shelton* factor – i.e., Plaintiff's failure to show that no other means exist to obtain the information he seeks - the court expresses no opinion on whether he could satisfy the other *Shelton* criteria should he be unable to obtain relevant information from FMF members or others.

In reaching this conclusion, the court has not considered Plaintiff's Reply Brief (Doc. 221, 222.) A reply brief to an objection is not authorized by the federal rules or the local rules. Federal

---

[3] As noted in *Shelton*, 805 F.2d at 1327: "The practice of forcing trial counsel to testify as a witness … has long been discouraged…. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the 'chilling effect' that such practice will have on the truthful communications from the client to the attorney is obvious."

Rule of Civil Procedure 72(a), which governs here, authorizes the filing of objections to a magistrate judge's ruling on nondispositive matters. The drafters added that "[i]t is also contemplated that a party who is successful before the magistrate judge will be afforded an opportunity to respond to [the] objections." Fed. R. Civ. P. 72, 1983 Advisory Committee Notes. But the drafters made no mention of a reply to the response. Rule 72(b), which applies to objections to dispositive orders, expressly authorizes a response brief but similarly makes no mention of a reply. In *Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 3895012, *8 (D. Kan. Sept. 6, 2017), Judge Marten noted that a local rule provides that the procedure for filing objections follows Rule 72(b), and that this rule "does not countenance a reply to a response to a party's objections." *Id.* (citing D. Kan. R. 72.1.4 and *Aurzadniczek v. Humana Health Plan,* No. 16-1282-JTM, 2016 WL 1266972, at *1 n.2 (D. Col. Apr. 1, 2016)). Other courts considering the issue have likewise concluded that Rule 72 does not contemplate reply briefs. *See e.g., Kemp v. Gen. Growth Servs., Inc.*, No. 1:15-CV-01180-SCJ, 2017 WL 8217632, at *1 (N.D. Ga. Mar. 6, 2017) ("the Court does not understand Federal Rule of Civil Procedure 72(b)(2) to provide for a reply brief"); *Star Envirotech, Inc. v. Redline Detection LLC*, No. EDCV1201861JGBKKX, 2016 WL 6877770, at *1 (C.D. Cal. Mar. 4, 2016) ("Neither Rule 72(b) nor the Local Rules for the Central District of California permit an objecting party to file a reply brief in support of its original objections"); *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 709 F. Supp. 2d 744, 747 (D. Ariz. 2010), *aff'd,* 454 F. App'x 596 (9th Cir. 2011) (Rule 72(b) does not provide for a reply brief).

The *Raymond* opinion indicated leave to file a reply could be granted in exceptional circumstances. *Raymond*, 2017 WL 3895012, at *8. Even assuming this court has discretion to allow a reply brief in an appropriate case, there is no persuasive reason to do so here. Plaintiff

moves for leave to file an edited reply[4] (Doc. 227-1), while Defendant moves to disregard the reply (Doc. 226). Plaintiff's asserted justification for filing a reply largely reasserts the arguments in his initial objection. *See* Doc. 227 at 5. Plaintiff also asserts a need to address new background facts and legal arguments, including a supposed settlement offer (Doc. 227 at 6), but such allegations are not material to the instant objection. The matter has been more than adequately briefed. Plaintiff has failed to show that the magistrate judge's ruling was clearly erroneous or contrary to law.

**Plaintiff's Objection to Order of Magistrate Judge (Doc. 215)**. Plaintiff also objects to the order of the magistrate judge denying Plaintiff's motion for leave to file a second amended complaint.[5] Pursuant to that motion, Plaintiff sought to add additional claims to the case, as well as add a request for punitive damages. (Doc. 152 at 10-14.) Plaintiff's objection only challenges the denial of his request to amend the complaint to add a request for punitive damages. (Doc. 215 at 16.)

Plaintiff misapprehends the effect of the magistrate judge's order. The absence of a specific request for punitive damages in a complaint does not necessarily preclude recovery of such damages. As a matter of proper pleading, Plaintiff should have stated in the Amended Complaint that he was seeking punitive damages. *See* Fed. R. Civ. P. 8(a)(3) (a pleading must contain a demand for the relief sought). Nevertheless, Rule 54(c) provides that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Courts construing these rules have held that a failure to formally pray for punitive damages in the complaint is not an absolute bar to such relief. Thus, in *Guillen v.*

---

[4] Plaintiff's initial 21-page reply brief (Doc. 221) exceeded the undersigned judge's 10-page limit. Plaintiff's edited version (Doc. 227-1) is 16 pages.
[5] For the same reasons previously indicated, the court does not consider Plaintiff's reply (Doc. 228) in resolving the objection.

*Kuykendall*, 470 F.2d 745 (5th Cir. 1972), the Fifth Circuit found the trial court erred in not instructing the jury on punitive damages even though the plaintiff did not seek them in the complaint, because the complaint alleged malice and excessive actions, and Rule 54(c) provides the plaintiff should be granted all the relief to which he is entitled. *Id*. at 748. The Eleventh Circuit similarly held a trial court erred by not allowing a plaintiff to claim punitive damages at trial where the complaint alleged the defendants acted maliciously, and defendants were otherwise on notice of the damage request. In such a case, "a specific prayer for punitive damages was unnecessary." *Scuitieri v. Paige*, 808 F.2d 785, 792 (11th Cir. 1987) (citation omitted). *See also Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008) ("the fundamental legal error in this case may have been the parties' and the district court's shared assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages.").

The Amended Complaint gave Defendant notice that Plaintiff was claiming damage from Defendant's allegedly malicious actions. It alleged that Defendant lacked probable cause for the PFS petition, that she acted with malice in singling out Plaintiff based on an unfounded suspicion he was the leader of the protest, that she maliciously continued the PFS order while knowing her allegations were false, that the action was terminated in Plaintiff's favor, and that Defendant's action caused him damages. (Doc. 84 at 6-7.). *Cf.* K.S.A. § 60-3701(c) (to obtain punitive damages under Kansas law, plaintiff must prove that defendant acted toward plaintiff with malice or similar state of mind). Plaintiff also provided Defendant with a damage disclosure under Rule 26(a) showing that he was seeking punitive damages. (Doc. 157-3 at 5.)[6] In circumstances similar to

---

[6] Plaintiff may have muddied the waters with a supplemental disclosure that did not mention or list punitive damages. (Doc. 119-5.) But as Plaintiff points out, the supplemental disclosure stated that "Plaintiff continues to assert the remaining damages claimed in his initial disclosures resulting from Burkhart's false accusations…." (Doc. 119-5 at 2.) The supplemental disclosure may not have been crystal clear, but Defendant apparently took no steps to clarify it, and it fails to show that Plaintiff affirmatively withdrew or waived his request for punitive damages.

11

these, numerous courts have held that recovery of punitive damages is not precluded. *See, e.g., Bowles v. Osmose Utils, Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (although complaint did not ask for punitive damages, defendant had notice of claim in time to prepare defense, and Rule 54(c) supported award).

Defendant argues that Plaintiff should be barred from seeking punitive damages because Plaintiff failed to plead them as required by Federal Rule of Civil Procedure 9(g). That rule requires that, "[i]f an item of special damage is claimed, it must be specifically stated." Defendant's argument presupposes that punitive damages are special damages. The court recognizes that a number of cases in this district have so concluded. *See, e.g., Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A, Inc.*, 2009 WL 1635894, *8 (D. Kan. June 11, 2009) (citing cases). However, a review of those cases shows that they are all based on the holding in *NAL II, Ltd. v. Tonkin*, 705 F. Supp. 522 (D. Kan. 1989). In that case the court concluded, without analysis or citation to any authority, that punitive damages were special damages subject to the pleading requirements of Rule 9(g). *Id.* at 528. Subsequent cases in this district have cited to *Tonkin* without any additional analysis.

Contrary to the Kansas cases, the prevailing view in other courts is that punitive damages are not necessarily special damages for purposes of Rule 9(g). *See Oklahoma ex rel. Wilson v. Axiom Re, LP,* No. CIV-17-0484-HE, 2018 WL 1221395, at *1 (W.D. Okla. Mar. 8, 2018) ("While the decisions are not of one accord, the court concludes punitive damages do not generally qualify as 'special' damages within the meaning of this rule,"); *Figgins v. Advance Am. Cash Advance Ctrs. of Mich, Inc.*, 482 F.Supp.2d 861, 870 (E.D. Mich. 2007) (punitive damages are not special damages); *Dowdy v. Coleman Co.*, No. 1:11CV45DAK, 2011 WL 6151432, at *5 (D. Utah Dec.

12

12, 2011) ("Special damages are not akin to punitive damages and are based on entirely different public policy considerations.").

Generally speaking, special damages are defined as "*compensatory damages* for a harm other than one for which general damages are given." Restatement (Second) of Torts § 904 (1979) (emphasis added). By contrast, the Restatement defines "punitive damages" as damages "other than compensatory or nominal damages . . . ." *Id.* § 908(1). Similarly, Black's Law Dictionary equates "actual damages" with "compensatory damages," and then goes on to define "punitive damages" as damages "awarded in addition to actual damages . . . ." DAMAGES, Black's Law Dictionary (10th ed. 2014). These sources collectively define "special damages" as a form of actual or compensatory damages, while "punitive damages" are expressly excluded from the category of actual or compensatory damages. Indeed, Black's notes that "punitive damages" may also be referred to as "*exemplary damages*; *vindictive damages*; *punitory damages*; *presumptive damages*; *added damages*; *aggravated damages*; *speculative damages*; *imaginary damages*; *smart money*; [or] *punies*," while alternative terms for "special damages" are limited to "*particular damages*; [or] *extraordinary damages*." *Id.* (italics in original). Conspicuously absent from these two definitions is any overlap whatsoever between alternative names for "punitive damages" and "special damages". Since special damages are a form of compensatory damages and punitive damages are not, it follows logically that punitive damages are not special damages. *See also*, *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995) ("Fed.R.Civ.P. 9(g) requires that the complaint plead 'special damage.' These are damages that are unusual for the type of claim in question—that are not the natural damages associated with such a claim. . . . Damages for personal injury are unusual in commercial cases, normal in tort cases; lost profits are normal in contract cases, unusual in personal-injury tort cases."); 5A Charles Alan Wright, et al.,

13

*Federal Practice and Procedure* § 1310 (3d ed.), Westlaw (updated Apr. 2018) ("Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case"); 25 C.J.S. Damages § 7 ("'special damages' or 'consequential damages' are other foreseeable damages within the reasonable contemplation of the parties at the time the contract was made"); *id.* ("Special compensatory damages are the natural but not the necessary result of an alleged wrong and are often considered to be synonymous with pecuniary loss and include such items as medical and hospital expenses, loss of earnings, and diminished capacity. They do not necessarily result from the wrong or breach of contract complained of, or which the law does not imply as a result of that injury, even though they might naturally and proximately result from the injury. Special damages have a ready market value, such that the amount of damages theoretically may be determined or calculated with relative certainty. Special damages, although resulting from the wrongful act, are not usually associated with the claim in question and must be pleaded in order to avoid unfair surprise to the defendant.")

Kansas law supports this distinction. Like the case at bar, *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438 (1980), involved a claim for malicious prosecution. In describing the applicable pleading requirements, the court stated as follows:

> In order for a plaintiff to recover in an action for malicious prosecution, he must establish that he suffered some actual damages as a result of the defendant's action. In some jurisdictions, the plaintiff must plead and prove special damages in order to maintain such an action. *Special damages are usually held to include either the arrest of the plaintiff's person, seizure of his property, or other special interference with his person or property.* The requirement of alleging "special damages" in a malicious prosecution action is known as the "English Rule." There exists in the United States a split of authority as to its application. . . .
>
> . . . .

> It is clear that Kansas has specifically rejected the requirement of some special interference with plaintiff's person or property in order to maintain an action for malicious prosecution. *It should also be noted that exemplary damages may be recoverable, provided actual damages are proved. Stalker v. Drake*, 91 Kan. 142, Syl. P 3, 136 P. 912; *Schippel v. Norton*, 38 Kan. 567, 16 P. 804 (1888).

*Nelson*, 227 Kan. at 281–82, 607 P.2d at 446–47 (emphasis added). The highlighted language from *Nelson* clearly distinguishes between special damages and exemplary or punitive damages. *See also Mynatt v. Collis*, 274 Kan. 850, 886, 57 P.3d 515, 537 (2002) ("As one commentator explains: 'Punitive damages may be contrasted with compensatory [and] special damages, … which, in contrast to punitive damages, are measured by the difference in the position of the party after the wrong as compared to that party's position before the wrong.'") (citing *Smith v. Printup*, 262 Kan. 587, 602, 938 P.2d 1261, 1274 (1997) (citing Blatt, et al., *Punitive Damages* § 1.3(B) (1991)).

Based on the foregoing, the undersigned judge respectfully disagrees with prior decisions in this district that punitive damages are special damages for purposes of Rule 9(g). Accordingly, Defendant's argument on this point is rejected. And, in any event, even in this district the cases recognize that under Rule 9(g), the pleading party need only "allege the circumstances upon which the punitive damages claim is made." *Capital Solutions*, 2009 WL 1635894, at *8. As noted, *supra*, the amended complaint on file in this case makes allegations that would help support a request for punitive damages, even though the words "punitive damages" were not included in the pleading.

The issue of whether the current amended pleading necessarily alleges facts that would allow a jury to consider an award of punitive damages is not before the court on the current objection. The only issue raised is whether the magistrate judge erred in denying the motion to amend the complaint; the court finds no error in that ruling. The court includes the above

15

discussion of Rule 54(c), however, to avoid any misunderstanding as to the scope of the magistrate judge's ruling: it does not eliminate the possibility that Plaintiff might be able to pursue relief that includes punitive damages. To the extent Plaintiff plans to seek punitive damages at trial, Plaintiff is nevertheless admonished to include that among his requested relief in the pretrial order. Whether a jury may ultimately consider an award of punitive damages in this case is a decision that will have to wait for another day.

**Defendant's Motion to Maintain Seal (Doc. 234).** The court's prior effort (Doc. 229) to resolve outstanding issues about sealing exhibits proved unsuccessful, as Plaintiff failed to comply with the order directing him to identify the deposition excerpts relevant to his objection. (Doc. 229 at 2.)

Having reviewed the parties' briefs, the court will grant Defendant's Motion to Maintain the Seal (Doc. 234) as to Exhibits 6 and 7, which will be sealed, except for the portions of those exhibits already publicly filed by Defendant.

**Conclusion.**

Plaintiff's Objections (Docs. 203 and 215) to the Orders of the Magistrate Judge are DENIED. Plaintiff's Motion for Leave to File Reply Brief (Doc. 227) is DENIED. Defendant's Motion to Disregard Reply Brief (Doc. 226) is GRANTED. Defendant's Motion to Maintain Seal (Doc. 234) is GRANTED to the extent stated above.

IT IS SO ORDERED this 24th day of August, 2018.

                                                    ___s/ John W. Broomes_____
                                                    JOHN W. BROOMES
                                                    UNITED STATES DISTRICT JUDGE